No. 6001.

## McAULEY & CLAMPITT *v.* L. B. HARRIS.

1. CHARGE OF COURT—REPETITION.—A charge of court giving a rule for computing damages, followed by a detailed illustration of the application of the rule as given, is not subject to the objection of unnecessary repetition, and such charge is not erroneous.

2. CONTINUING COVENANT.—The clause not to overstock the pasture, made in an agreement by the landlord in taking cattle to pasture, is a continuing covenant. That the owner of the stock inspected the pasture and acquainted himself with its capacity before the contract, does not relieve the owner from his covenant against overstocking it.

3. CONSTRUCTION OF CONTRACT.—While the contract provided a mode for ascertaining the number of cattle for which pasture fees should be paid, although resort to that mode was prevented by the voluntary act of the owner of the cattle, still the determination of the number

was for the jury upon all the testimony. It was error in the court to charge that the largest number proven to have been put in should be found.

4. CONVERSATIONS BETWEEN PARTIES.—All said at the same time upon the same subject is admissible when a part of a conversation is introduced in evidence by one party, that is, such other parts of the same conversation as will explain the part admitted should be heard so that the whole admission may be understood; parts not explanatory of that admitted nor pertinent to the case should be excluded.

5. BILL OF EXCEPTIONS.—Unless it is shown by the bill of exceptions what it is expected to prove in answer to the excluded question, the assigned error in excluding the question will not be considered.

6. DUTY OF LANDLORD TO KEEP UP PASTURAGE FENCES.—Testimony to the bad condition of the fences and to the number, if any, of cattle lost from the pasture under the contract above was admissible in defense, even in absence of an express agreement to keep up the fences of the pasture.

7. LANDLORD AND TENANT.—Under such contract the landlord could not exact pay for pasturage of cattle escaping by reason of defective fencing, and would be responsible for other damages if resulting in loss of the cattle.

APPEAL from Tom Green. Tried below before the Hon. Wm. Kennedy.

This is an appeal from a judgment below for two thousand eight hundred and sixty-eight dollars in favor of Harris, the appellee, against appellants. The suit was upon the following contract:

"THE STATE OF TEXAS, ⎱
    TOM GREEN COUNTY. ⎰    Know all men by these presents, That L. B. Harris, party of the first part, and J. W. Clampitt and Wm. McAuley, parties of the second part, have this day entered into the following agreement, to-wit: The said Harris agrees that the said McAuley & Clampitt may put into his pasture on the Colorado river, in Tom Green county, Texas, about 3000 head of stock cattle, and there to remain from Oct. 10th, 1884, to six months thereafter, requiring that all calves of the above stock shall be branded in the said McAuley & Clampitt brand before they are put into the pasture. And the said Harris is to receive from the said McAuley & Clampitt for pasturing the same for said time $1.25 per head for the entire number of cattle counted at the end of six months from Oct. 10, 1884, excepting any and all calves that have come or may come since June, 1884. It is hereby agreed by both par-

ties hereto that if the said above cattle remain in the pasture premises of the said Harris that said McAuley & Clampitt are to pay same proportion both as to price per head and time thereafter they remain in the premises. The sum accrued for such pasturage shall be due and payable on delivery of the cattle from the pasture. It is further understood and agreed that should the cattle not be delivered out of the pasture promptly at April 10, 1885, that all calves under six and one-half months are not to be counted. And Harris agrees not to overstock the pasture at any time the cattle remain therein." Dated October 4th, 1884

Plaintiff alleged that defendants placed about three thousand head of cattle on the pasture, and that the cattle remained in the pasture until May 5, 1885. Judgment was asked for four thousand two hundred dollars.

The defendants, among other things, pleaded that plaintiff, as part consideration of the contract, agreed to keep the fences around the pasture in good condition, so as to prevent the ingress and egress of stock, and not to overstock the pasture; that plaintiff violated both covenants; special damages were alleged from cattle escaping, and from loss from overstocking the pasture.

The pasture contained sixty thousand or seventy thousand acres of land. Defendants had cattle in the pasture under an old contract at the time the contract was made.

The testimony sufficiently appears in the opinion.

Upon the main issues the court charged the jury: "You are instructed that if you find from the evidence that the defendants McAuley & Clampitt put cattle into the pasture of L. B. Harris, and that Harris did not overstock said pasture, you will return a verdict for the plaintiff. If you find for plaintiff and find that the cattle remained six months in the pasture, and that they were counted when turned out of the pasture (or if not counted that the failure to then count them did not arise from the willful acts of either of the defendants) you will assess the damages by multiplying the number of cattle turned out (exclusive of calves dropped since June, 1884) by one and one-fourth dollars, together with interest thereon from the date of turning out to this time, at the rate of eight per

cent per annum. If the cattle remained more than six months in said pasture you will find an additional sum in favor of plaintiff equal to the product of the number of cattle turned out, excluding all under six and a half months old, multiplied by a number bearing the same proportion to one and a quarter dollars that the time between the tenth of April, 1885, and the date of turning out bears to six months, with like interest as above. As an illustration of the rule herein given to determine the amount of additional damages in favor of plaintiff (if you find any), suppose the cattle (excluding those under six and one-half months) turned out numbered one thousand, and that they had remained one month after the tenth of April, 1835, then as one month is one-sixth of six months, you would multiply the one thousand by one-sixth (or twenty and five-sixth cents) of one dollar and a quarter, and the same rule would obtain whatever the number of cattle or length of time after April 10, 1885, you may find from the evidence. And in this connection you are instructed that if you find from the evidence that the cattle of defendants turned out of said pasture were not counted at that time for the purpose of ascertaining the amount due plaintiff under his contract, and if you find that the failure so to count them was the result of the voluntary action of either of the defendants, in such case, unless the evidence clearly shows the number of said cattle turned out, you will estimate them at the highest number which the evidence shows to have been put in said pasture."

The other matters discussed in the opinion can be understood from the facts therein stated.

*Neill & Frederich* and *H. C. Fisher*, for appellant: 1. The court erred in so much of its charge as attempts to instruct the jury in the manner and method of computing the amount due plaintiff for pasturage of cattle, as such charge is on the weight of evidence, and intimates to the jury the opinion of the court upon the facts of the case and is hypothetical and argumentative. (Hays v. Hays, 6 Texas Law Review, 625; Pierce v. Fort, 60 Texas, 471; Ruffier v. Womack, 30 Texas, 343; Barnett v. Logue, 29 Texas, 289; Thompson Charging Jury, 101, 63, 81.)

2. The court erred in its charge when it attempts to take from the jury the right to determine what was meant and intended by the parties to said contract wherein the said Harris

agreed not to overstock said pasture at any time said cattle may remain in said pasture. (Gibbs v. Penny, 43 Texas, 563; Stamper v. Johnson, 3 Texas, 1; Ruffier v. Womack, 30 Texas, 343; Dunham v. Chatham, 21 Texas, 245; Roberts v. Short, 1 Texas, 375; Hoore v. Puckett, 22 Texas, 206; Grimes v. Watkins, 59 Texas, 139; Goldman v. Blum, 58 Texas, 636; Taylor v. McNutt, 58 Texas, 73; Masterson v. Goodlett, 46 Texas, 406.)

3. The court erred in its charge to the jury to the effect that the examination of the pasture by the defendants and the subsequent making of the contract would entitle plaintiff to allow his stock in the pasture on the tenth of October, 1884, to remain therein, and such action of plaintiff would not render him guilty of overstocking said pasture. (Page v. Arnim, 29 Texas, 56; Scoby v. Sweatt, 28 Texas, 713; Hart v. Bullion, 48 Texas, 278; Life Insurance Co. v. Davidge, 51 Texas, 250; Banking Co. v. Stone, 49 Texas, 15; Dean v. Lyons, 47 Texas, 20; Parker v. Beavers, 19 Texas, 409; Thompson v. Thompson, 12 Texas, 327; Loving v. Dixon, 56 Texas, 78; H. & T. C. R. R. Co. v. Terry, 42 Texas, 454; Thompson Charging Jury, 83–104.)

4. The court erred in its charge wherein it instructs the jury to 'find the highest number of cattle the evidence shows was put in said pasture in estimating the amount due plaintiff, unless the evidence clearly shows the number of said cattle turned out, and that the failure to count them was the voluntary action of either defendants.' (Hays v. Hays, 6 Texas Law Review, 625; Powell v. Messer, 18 Texas, 406; Hough v. Hill, 47 Texas, 153; Sparks v. Dawson, 47 Texas, 142; Thompson Charging Jury, 83–99.)

5. The conversations and admissions of Harris sought to be established upon his cross examination were improperly excluded. (Thomas v. Hammond, 47 Texas, 54; Cox v. Bray, 28 Texas, 258; Carter v. Carter, 5 Texas, 94; Stamper v. Johnson, 3 Texas, 1; Gibbs v. Penny, 43 Texas, 563; Ruffier v. Womack, 30 Texas, 343; Dunham v. Chatham, 21 Texas, 245; Roberts v. Short, 1 Texas, 375; Grimes v. Watkins, 59 Texas, 139; Smith v. Falwell, 21 Texas, 468; Hoore v. Puckett, 22 Texas, 206; Barnett v. Logue, 29 Texas, 289; Preston v. Breedlove, 36 Texas, 96; Goldman v. Blum, 58 Texas, 640; Taylor v. McNutt, 58 Texas, 73; Ry. Co. v. Jones, 63 Texas, 527; 1 Greenleaf Evidence, secs. 282–289.)

COLLARD, JUDGE. 1. The court gave the jury a rule of computing the amount due plaintiff Harris, in case their finding should be for him, substantially according to the terms of the contract.

The rule furnished by the contract was one dollar and twenty-five cents per head up to April 10, 1885, for the number of cattle turned out of the pasture, excluding calves dropped after June, 1884, and at the same rate, per six months, for the time the cattle remained in the pasture after April 10, 1885, excluding calves six and one-half months old and under. We understand the charge to give the contract rate with interest, as allowed by law, from the time the cattle were turned out of the pasture. It was necessary, in case the jury should find for plaintiff, to give them the contract rate of pasturage, and to do so would not be to charge upon the weight of evidence, or to express an opinion upon the case.

If any real objection could be found to this portion of the charge, it would be that it should have been supplemented by a direction as to how the verdict should be reached in case the defenses set up were established by the evidence in whole or in part. The error assigned does not make this objection.

There was no unnecessary repetition in the charge under the rule of computation given in the charge. The court stated the rule, a rule somewhat complicated, and gave an example of the process. The charge is not obnoxious to the principle laid down in Hays v. Hays, 66 Texas, 607.

2. By the contract Harris agreed not to overstock the pasture during the time defendants' cattle remained on it. The court instructed the jury that if defendants, or either of them made an examination of the pasture and ascertained its contents, and then made the contract to put their cattle therein, the plaintiff was entitled to allow his stock in the pasture on the tenth of October, to remain therein, and such action would not render them guilty of overstocking the pasture.

Upon this subject the defendants requested a special charge in effect as follows, which was refused: "By the terms of the contract, plaintiff was not to put nor permit to remain in the pasture at any time during the continuance of the contract, so many stock as would consume the grass and render it unfit for ordinary purposes of pasturage." It was in proof that defendant Clampitt inspected the pasture beforehand, and then executed the con-

tract to put in 3000 head of cattle. There was evidence adduced by plaintiff tending to show that he took more cattle out of the pasture than were put in, except defendants' cattle, after the contract was executed; but it also appeared that the grass failed and the pasturage was insufficient for all the stock, sheep, horses and cattle, for the months of January, February and March, 1885, and that some of defendants' cattle, from 60 to 80, died, and some of these from starvation. There was evidence, too, tending to show that the grass was not as good inside as it was outside the pasture during the months of January, February and March. Yet it is shown on the other hand that the winter was unusually severe, and that the snow lay on the ground nine days at one time: and from these causes a much greater per cent of cattle was lost in the surrounding country than usual. Taking all the facts in evidence on both sides, there was, to say the least, a conflict of evidence as to whether or not the pasture was overstocked during the time it was in use by defendants. The fact that Clampitt, one of the defendants, accepted the pasture stocked as it was at the time the contract was executed, would not excuse plaintiff from the obligations imposed upon him not to overstock it during the time defendants' cattle remained upon it. The provision not to overstock the pasture was continuing; it operated during the whole time the contract was in force. It was plaintiff's duty to see that it was not overstocked while in use by defendants. Plaintiff may have assumed an onerous duty by his agreement and its performance may have been expensive and injurious, but he had so contracted and he must be bound accordingly. While the snow was on the ground he would not be held to a literal complian : with the terms of the contract, but if there were months when by reason of the fact that plaintiff had allowed the pasture to become so crowded with stock that it was insufficient for the ordinary purposes of pasturage, and defendants were thereby damaged by loss of cattle from starvation, plaintiff would be required to make the damage good. He would not be bound for any damage resulting in death from other causes. The issue was made by the pleadings and the contract, and it was the privilege of defendants to have it submitted to the jury under the evidence. The court erred in the general charge upon this subject and in refusing the charge asked.

3. The court instructed the jury that "if they should find

from the evidence that the cattle turned out of the pasture by defendants were not counted at that time for the purpose of ascertaining the amount due plaintiff under the contract, and if they should find that the failure to count them was the result of the voluntary act of either of the defendants in such case, unless the evidence otherwise clearly shows the number of cattle turned out, you will estimate them at the highest number which the evidence shows to have been put in the pasture."

Upon the same subject the defendants requested the following charge, which was refused: "If the jury believe from the evidence that one thousand one hundred and nineteen head of cattle was the true number taken out of the pasture by defendants, then defendants, under the contract, are liable for pasturage on said number and no more." Defendants complain that there was error in the charge given and in the refusal to give the one requested.

The price to be paid by defendants for pasturage was fixed by the contract at one dollar and twenty-five cents per head, and at that rate per six months for the number "counted" when delivered out of the pasture. The inquiry was, how many were turned out or "counted" when turned out?

The jury might well look to the number of cattle put in the pasture, in arriving at the number turned out, taking into consideration the number that died and that may have escaped by reason of insufficient fences; but a reference to the number put in would not be the only method of ascertaining the number turned out, or by any means the most certain and definite. The greatest number put in would not be the number turned out, at all; and we can not agree that such a rule should apply merely upon the ground that defendants may by a voluntary act have caused the failure to count the cattle at the proper time. There are cases where the highest price of an article converted by the wrongful act of another would be allowed the owner—the highest market price from the time of conversion to the time of trial; and there are many cases where a wrongful and voluntary confusion of one's own with the goods of another would work a forfeiture of the title of the wrong doer to the goods so confounded; but in these cases the act must be wrongful.

We do not intend to say, however, that such cases are analogous to the one before us. Here the real number of cattle to

be charged for pasturage may be ascertained by proof with reasonable certainty. We think the true issue should have been presented to the jury as stated in the contract, and they should have been left to determine from all the evidence what the number of cattle turned out really was. It was their province to do so. The charge given by the court was not warranted by the circumstances, and is not the law of the case.

4. Defendants offered to prove by Clampitt all the conversation plaintiff had with him, on the ground that plaintiff had proven a part of the conversation. Plaintiff objected and the court sustained the objection. Defendants saving an exception here assign the ruling as error. All of a conversation is not admissible because a part of it has been used by the other side. Only such other part of the conversation as relates to the same subject is admissible, unless the whole conversation is admissible on other grounds. All that was said at the same time upon the same subject is admissible; that is, such other parts of the same conversation or admission as will explain the part admitted, so that the whole admission will be understood. (1 Greenl. Ev., sec. 201, 202, and note a.) There was no error in the ruling unless the evidence was admissible on other grounds.

Defendants asked witness Clampitt if plaintiff did not agree to keep the fences around the pasture in good repair? The court sustained plaintiff's objection to the question, and defendants having excepted to the ruling now assign the ruling as error. What the answer to the question would have been, or what defendants expected to prove, does not appear. It has been several times decided by our Supreme Court that unless it is shown by the bill what was expected to be proved in answer to a question, the assigned error will not be considered.

Defendants asked the same witness what the condition of the fence around the pasture was at the time his cattle were there? They expected to prove by the witness that the fence was in bad condition, not sufficient to prevent cattle from going in or out. Error is assigned to the ruling excluding the evidence.

Defendants also asked the same witness, "What number of cattle, if any, defendants lost out of the pasture?" and expected to prove that they had lost a considerable number. The court sustained the plaintiff's objection to the question. Both the question and answer were admissible. If the fences were not sufficient to hold the cattle and some of them escaped, they

could not be "counted" when turned out. The evidence would have been admissible without any proof that plaintiff had agreed to keep the fences in repair, upon the principle furnished. in the contract of computing the number of cattle to be charged for pasturage.

Though we are not required by the rules to express any opinion as to the ruling of the court in excluding the question asked Clampitt, "if plaintiff did not agree to keep the fences in repair," it may be advisable, in view of another trial, to say that, in our opinion, it is wholly immaterial whether he agreed to do so or not. He was bound to do so whether he contracted to that end or not. What were the relations of the parties? Not that of landlord and tenant, certainly. Plaintiff was, by his contract, furnishing pasturage for so many of defendant's cattle, and was furnishing a fenced pasture. He did not rent them the pasture, but charged them so much for the privilege of grazing and keeping their cattle in his pasture. It was his duty, then, to keep his fences in repair to make it a reasonably safe inclosure for the cattle of defendants. If cattle escaped from the pasture he would not be allowed compensation for them, and damages might otherwise have resulted to defendants by loss of cattle or by the pasture becoming crowded and overstocked on account of bad fences.

Because of errors pointed out, we conclude the cause should be reversed and remanded for a new trial.

*Reversed and remanded.*

Opinion adopted October 30, 1888.

STAYTON,
*Chief Justice.*