## AMERICAN BANKERS LIFE INS. CO. v. BARLOW.

### No. 2093.

Court of Civil Appeals of Texas. Waco.

April 6, 1939.

Rehearing Denied May 11, 1939.

Davis, Jester & Tyson, of Corsicana, for appellant.

Lovett, Lovett & Ralston, of Corsicana, and Naman, Howell & Boswell, of Waco, for appellee.

ALEXANDER, Justice.

Mrs. Freda Barlow, as administratrix of the estate of her deceased husband, T. M. Barlow, brought this suit against American Bankers Life Insurance Company, a statewide mutual assessment life insurance association, to recover on a life insurance certificate of date April 25, 1936, issued by the defendant on the life of the said T. M. Barlow and payable to his estate. A trial before a jury resulted in judgment for the plaintiff for $1,000. The defendant appealed.

The certificate of insurance provided on its face that the insurer would pay to the beneficiary upon the death of the said T. M. Barlow the sum of $5,000. However, the insured was 49 years of age and it provided on the second page of the policy that if the insured was over 48 years and under 52 years of age, the insurer would be liable for only 80% of the policy, or the sum of $4,000. On the third page, the certificate provided that "should a member under this * * * certificate within one year from the effective date of said certificate or any reinstatement die as a result of or contributed to by any form of the following diseases: * * * bacterial infection * * * then the benefits shall not exceed one-fourth of the amount otherwise payable hereunder, plus the refund of all amounts paid hereon while the certificate was continuously in force." As a part of the same paragraph of the certificate, it was provided that "in the event of a claim arising hereunder within four months from the effective date of such certificate or reinstatement the benefits applying shall not exceed one-fourth of those otherwise applying, plus the return of all amounts paid hereunder while such certificate was continuously in force." The insured died of streptococcic meningitis on April 17, 1937, within less than one year from the date of the certificate, and as a result, the amount payable was reduced to $1,000. It is appellant's contention that the policy lapsed for nonpayment of dues and was reinstated within less than four months prior to the death of the insured, and that under the provisions of the certificate last above quoted, the amount payable to the beneficiary should be further reduced to $250.

The face of the policy contains the words "Amount of Call $6.25." Section 9 of the certificate provided: "The Member agrees to pay the amount shown on the face hereof as provided, upon call, for the Mortuary and General Funds, which is to be used only as set forth in the by-laws and as prescribed by law and the regulations governing such companies. The Member shall not be liable for more than one payment for the death of a member. Provided however that such a payment provided in this paragraph shall be made every four weeks when no call has been made for the payment of a death claim, the proceeds of such payments to be used for the Mortuary and General Funds as above set forth. This provision shall constitute notice of such payments being due and payable. Once

each year a call may be made for the Mortuary Reserve Trust Fund, in an amount equal to one regular payment, the entire proceeds of such payments made within the prescribed time to go into the Permanent Mortuary Reserve Trust Fund for the future safeguard of this and other certificates issued by the Company, the interest therefrom to accrue to the General Fund. One additional regular Mortuary General Fund payment may be called once each year for the use of such funds as provided by law and regulations governing such payments." Section 4 of the certificate provided as follows: "The failure to pay any call levied by the company, as provided herein, within fifteen days of and including such due date shall, without further action by the company, ipso facto lapse this certificate and the member shall thereafter have no claim hereunder until and unless he shall have been reinstated by the President or Secretary of the Company in accordance with the provisions herein." The regular installment of $6.25, payable under the terms of the policy every four weeks, which matured on February 18, 1937 was not paid promptly when due. On March 3, 1937, the company made a special call for $6.25 for the Permanent Mortuary Reserve Fund. On March 17, 1937, the insured forwarded to the company his check for $12.50, which was received on March 18th, and cashed by the company. It is appellee's contention that this payment was sent to the company in payment of the $6.25 which was due February 18, 1937, and the special call of $6.25 for the Permanent Mortuary Reserve Fund made on March 3, 1937, and that the company accepted the same in payment thereof and thereby waived any right that it may have had to forfeit the policy by reason of failure to make prompt payment of the above payments. On the other hand, it is the contention of the appellant that such payments were not made until after the expiration of the grace period and that a forfeiture occurred ipso facto, and that thereafter the insured made application for and was reinstated, and that since such reinstatement occurred within less than four months prior to his death on April 17, 1937, the company was liable for only the sum of $250.

It is undisputed that the call for $6.25 for the Permanent Mortuary Reserve Fund was not made until March 3, 1937, and that the payment of $12.50 was received by the company on March 18,

1937, which was within the fifteen days grace period after the call. Consequently, there could have been no forfeiture because of failure to make prompt payment of this assessment. The regular installment of $6.25, due February 18, 1937, was not paid until March 18th, which was more than fifteen days after it matured, but the policy does not provide for automatic lapsation for failure to pay regular installments. The only provision for automatic forfeiture is found in section 4, which provides that the policy shall lapse "on failure to pay any call levied by the company." The regular installment of $6.25, payable each four weeks was due without call, and no call was ever made therefor, and consequently no forfeiture occurred by reason of the failure to make prompt payment thereof. Forfeitures are not favored by the law, and where a party relies thereon, he must establish his right thereto by clear and unmistakable language and not by mere implication. 24 Tex.Jur. 702; Philadelphia Underwriters Agency v. Moore, Tex.Com. App., 229 S.W. 490.

■ Furthermore, the insurance company failed to establish its contention, that the policy had been reinstated on the application of the insured. It introduced an application for reinstatement which it claimed to have received through the mail but the evidence showed that it was a forgery. The jury found that the insurance company received and accepted the payment of $12.50 made to it on March 18th in payment of the regular installment of $6.25 due on February 18th, and the mortuary assessment of $6.25 made on March 3rd, and that it did not accept same as a payment for reinstating the policy. The insurance company, of course, had a right to waive the forfeiture. In this instance, it was to its interest to do so, for by allowing the member to pay his back dues and remain in good standing, it would receive the sum of $12.50, whereas, if a forfeiture had been insisted upon, the insured could have purchased a new policy giving the same protection for only the initial payment of $6.25. If after a forfeiture occurred the insurance company received and accepted the payment of $12.50 in payment of the back assessments as found by the jury and not under an agreement to reinstate the policy, it thereby waived any forfeiture that had occurred and is not now in position to insist on same. 24 Tex.Jur. 890; Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S.W. 456, 47 A.L.R. 876;

Calhoun v. Maccabees, Tex.Com.App., 241 S.W. 101; Equitable Life Assurance Association v. Ellis, 105 Tex. 526, 147 S.W. 1152.

■ In an effort to prove that the policy had actually been reinstated on the application of the insured, the defendant introduced in evidence part of a letter written by the plaintiff's attorney to the company after the death of the insured in which he stated that he had before him a letter from the company of date March 18, 1937, advising the insured that his policy had been reinstated. Thereupon, the plaintiff was permitted to introduce in evidence, over the defendant's objection, the balance of the letter in which the attorney listed the cancelled checks in his possession showing the payments that had been made on the policy, and further stated that he had examined a photostatic copy of the purported application for reinstatement and that the signature thereto did not look like the signature on the checks signed by the insured to the company and that he had exhibited same to Mrs. Barlow and she stated that she knew it was not his signature thereto. We agree with the appellant that the evidence complained of was inadmissible. Ordinarily, where a party introduces a part of a letter written by his adversary, such adversary may introduce only so much of the remaining portion of the letter as relates to, has connection with, or tends to explain the portion already introduced. He may not introduce self-serving declarations relating to other matters. 17 Tex.Jur. 376; McCauley v. Harris, 71 Tex. 631, 9 S.W. 679; T. A. Robertson & Co. v. Russell, 51 Tex.Civ.App. 257, 111 S. W. 205. However, we do not think that any material injury resulted from the introduction of the portion of the letter complained of. In the first place, as above stated, it does not appear that the policy ever lapsed for failure to pay dues. In the second place, the checks referred to in the letter were admitted in evidence without objection and Mrs. Barlow testified on the trial that the purported application for reinstatement was a forgery and her evidence in this respect was not contradicted. It is apparent therefore that the introduction of the remaining portion of the letter did not materially injure the defendant, and consequently the error does not require a reversal of the judgment. Sturdevant v. Hooper, Tex.Civ.App., 101 S.W.2d 379, par. 4; 3 Tex.Jur. 1257, par. 880; Rule 62a; Plunkett v. Simmons, Tex.Civ.App.,

63 S.W.2d 313, par. 8 and authorities there cited.

The judgment of the trial court is affirmed.