AMELIA C. CASSTEVENS V. TEXAS STANDARD LIFE INSURANCE COMPANY.

No. 7665. Decided October 15, 1941.
Rehearing overruled November 26, 1941.
(155 S. W., 2d Series, 916.)

616

*Vinson, Elkins, Weems & Francis,* of Houston, and *Marvin Roberson,* of Dallas, for plaintiff in error.

It was error for the Court of Civil Appeals to hold as a matter of law that statements made by insured in his application for insurance to the effect that he did not have high blood pressure, heart disease or rheumatism, etc., should be treated as warranties, and that their falsity alone, regardless of whether they increased the risk assumed, would defeat recovery on the policy, because the policy itself provided that untrue statement made regarding age, health, or family history of the insured, or the misstating or withholding of any fact that would materially increase the risk assumed would make said policy null and void, therefore the falsity of the statements made in the application would not defeat the policy, unless it be determined that such false statements materially increased the risk assumed. Peoples Mut. Life Assn. v. Cavender, 46 S. W. (2d) 723; Phoenix Assurance Co. v. Munger Imp. Cotton Mach. Mfg. Co., 92 Texas 297, 49 S. W. 222; Delaware Ins. Co. v. Harris, 64 S. W. 867; 4 Couch on Ins. pages, 2723 and 2838.

*A. D. Dyess,* of Houston, and *G. R. Lipscomb,* of Fort Worth, for defendant in error.

Where the undisputed evidence showed that the insured in his application for membership certificate and for policy of insurance had stated and warranted that he was in good health and had never suffered from or been told that he had heart trouble or high blood pressure, while in fact he was being treated for such troubles by a physician who had advised him of his condition, and where the policy of insurance issued to him stated that said policy would be void and should never become effective unless delivered to insured while he was in good health, said policy was void and unenforceable and the court erred in refusing to peremptorily instruct the jury to find a verdict in favor of such insurance company. Eminent Household of Columbian Woodmen v. Freeman, 200 S. W. 186; Rich-

mond v. Provident Ins. Co., 91 S. W. (2d) 1180; Alamo Health & Accident Ins. Co. v. Cardwell, 67 S. W. (2d) 337.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The Texas Standard Life Insurance Company issued a life policy ($5,000) to William H. Casstevens on November 1, 1933, premium payable $10.00 monthly, or $30.00 quarterly. The risk was thereafter taken over in the manner hereinafter stated by a company of the same name. Subsequent to the death of the insured, but before Mrs. Casstevens filed suit upon the policy, the successor company sued to cancel. Judgment was for Mrs. Casstevens upon her cross action for $2,500.00 and interest, rendered by the trial court upon jury findings. The Court of Civil Appeals reversed the judgment and rendered judgment cancelling the policy. 132 S. W. (2d) 134.

The issuing company operated as a local mutual aid association under what is now Article 4875a, sections 1 to 31, of Vernon's Texas Statutes, 1936. The successor company, under circumstances subsequently to be detailed, qualified soon after the policy was issued to write mutual aid insurance on a state-wide basis, under Article 4859f, sections 1 to 20, of the statutes.

The provisions of the application made by Casstevens, together with his answers, which form the principal basis of controversy, are as follows:

"1. I hereby make application to the Texas Standard Life Insurance Company and I warrant and declare that I am now in good health, and I further agree that the falsity of any statement made herein shall bar the right to recover. I agree and bind myself and all others entitled to benefits under this policy to abide by and be governed by the constitution and by-laws of the company now in force or that may hereafter by enacted. * * *

"10. Are you in sound health, both mentally and physically? Yes.

"11. Have you ever had or been told that you have any of the following diseases or ailments? * * * Heart, No. * * *. High blood pressure, No. * * * Rheumatism, No. * * *.

"I hereby warrant * * * that the answers to the questions above named are true and correct. * * *."

The by-laws of the issuing company in force when the policy was delivered contain, among other provisions, the following:

"* * * and in accepting membership in the company such member herewith warrants * * * that he is * * * not under the care or treatment of any persons for any ailment whatsoever, and/or is not otherwise in any condition, mentally or physically, *that would increase the risk of the company;* and said member herewith agrees that any misrepresentations shall void such policy and the company shall not be liable for any sum of money other than to refund the mortuary portions of the assessments paid in by said member." (Italics ours.)

The by-laws contain also this provision:

"Application blanks * * * shall be furnished by the Association and insurance shall not be binding until the application has been approved by a majority of the directors, or the person designated by them to perform this service, and any misrepresentation *made therein with intent to defraud, shall void such policies.*" (Italics ours.)

The policy provides that the applicant "must be in good health at the time of delivery" and that the issuance of the policy is based upon the application, "which shall constitute a part of this contract"; also that if any untrue statement has been made therein as to the age, health, family history or occupation of the insured, *or any other fact which would materially increase the risk assumed, or if any fact has been withheld which would materially increase the risk assumed,* or "if the insured shall not be in good health, or * * * under treatment * * * for any disease or ailment whatsoever, at the time of delivery of the policy, then the policy "shall be null and void" and the company liable only for the repayment of amounts paid by the insured.

The policy was issued on November 1, 1933, and Casstevens died July 3rd, 1935. It appears in the proof of loss filed by Mrs. Casstevens, together with the accompanying sworn statement of Dr. Cahill, who attended the insured in his last illness, that the cause of his death was "heart failure"; that the duration of the "heart trouble" was from May 9, 1935, to July 3rd of that year, when the insured died. Upon receipt of the proof of loss and statement suit was filed by the successor company to cancel the policy, predicated upon fraud alleged to have been perpetrated by the insured in making the statements in his

application to the issuing company. Thereupon Mrs. Casstevens filed her cross action and the case was tried and appealed to the Court of Civil Appeals with the result stated.

It will be observed upon examination of the opinion of the Court of Civil Appeals that it is the view of the Court that there was evidence to support the issues submitted to the jury, and that "it must be accepted as true" that Casstevens, as stated in his application, was "in good health at the date of the issuance of the policy"; that the statement in the application that "he had not had, and had not been told that he had, high blood pressure," was not made *with intent to deceive the company;* and also that there was evidence to support the finding that "the condition of his blood pressure at the date of the policy * * * did not materially increase the risk to be assumed by the insurer."

**1** The Court of Civil Appeals so held and we are in accord with the holding and with the view of the record upon which the holding is predicated. We are not in accord, however, with the view that the issues involved "come down to the single one of whether the certificate was void because initially based upon untrue warranties," because we cannot accept the holding that Casstevens' answers to the inquiries in the application above referred to should be treated as warranties; and that their falsity alone, *regardless of whether they materially increased the risk assumed,* would defeat recovery of the policy.

**2** The Court of Civil Appeals correctly holds that neither Article 4875a, section 1 to 31, under which the issuing association was operating, nor Article 4859f, sections 1 to 20, under which the assuming association operated, contains any provision that a misrepresentation, in order to avoid a policy, must be material to the risk; and further correctly holds that the statutes applicable to old line reserve insurance which make provision with respect to misrepresentations, are not applicable to, and do not regulate, the business of mutual aid and fraternal associations. Houston Life Ins. Co. v. Dabbs, (Com. App.) 132 Texas 566, 125 S. W. (2d) 1041.

**3** It does not follow, however, that since the insurance statutes concerning warranties and misrepresentations do not apply to mutual aid companies, such companies are inhibited, in the absence of statutory regulation upon the subject, from voluntarily incorporating in their insurance contracts qualify-

ing provisions which have the effect of converting such warranties into representations merely. This, we hold, is what the issuing company did in the present case, as shown by the provisions of the application, the by-laws and the certificate, stated above.

The provisions referred to are similar in legal effect to those contained in the application, by-laws and certificates which constituted the contract involved in Peoples' Mutual Life Ass'n v.Cavender, (wr. dism.) 46 S. W. (2d) 723, in which the stipulations were held to be representations merely and not warranties.

It was the theory of the association in that case (a mutual) that since the application stated Cavender had not had any surgical operations, and since the evidence showed he had, the insured could not recover, as there had been a breach of· the warranty provision of the application. The contention was overruled, the Court of Civil Appeals stating that while the application did stipulate that false statements of the member would avoid the policy, they "should be read in connection with the certificate of insurance issued, as well as the constitution and by-laws"; and that the provisions "when read in the light of the by-laws, application and certificate," mean that "only material representations shall avoid the certificate." The meaning accorded the contract in that case is correct, and we accord a similar meaning to contract here under consideration, which carries similar provisions. Furthermore, the principles of construction of the warranty provisions applied in the Cavender case are consistent with those applied in Phoenix Assurance Co. v. Munger Improvement Cotton Machine Mfg. Co., 92 Texas 297, 49 S. W. 222, Reppond v. National Life Insurance Co., 100 Texas 519, 101 S. W. 786, Delaware Ins. Co. of Philadelphia v. Harris (wr. ref.) 64 S. W. 867; and with those stated in Couch on Insurance, Vol. 4, section 861, pp. 2838 and 2840; section 836, p. 2723; and section 864, p. 2850.

The Court of Civil Appeals erred in applying the strict rule as to warranties in determining the meaning of the contract in the present case.

The contract involved in Modern Order of Praetorians, 203 S. W. 397, cited by the Court in support of its conclusion, contains no stipulations so qualifying the warranty clauses as to

make them representations marely, hence the rule there applied has no application here.

The trial court awarded judgment upon the findings of the jury in the sum of $2,500.00 and interest. The findings pertinent to the amount of recovery are that the company "maintained a class or group of membership styled 'S. R.'," and that "Casstevens, at the time of his death, was being carried by the plaintiff" under such class or group.

The view of the trial court in making the award in the amount stated (one-half of the face amount of the certificate) was that there was evidence that the assuming company, after taking over the assets of the issuing company, maintained an "S. R." (stipulated rate) group, as found by the jury, in which "Group A" risks such as Casstevens, were placed; that at the time of his death there were funds available to pay the amount due on policies carried in the stipulated rate group; and that the amount recoverable under the policy was one-half of its face amount, on account of his death within two years from its date.

We overrule the company's contention, as did the Court of Civil Appeals, that there was no evidence supporting the jury's findings as to the group in which the insured was being carried at the time of his death, and call attention to some of the facts supporting such findings.

On October 10th, 1933, twenty-one days before the issuance of the Casstevens policy by the local aid company, a resolution was adopted by that company (M. C. Driscoll, president) reciting substantially that certain persons were in the process of qualifying to conduct a statewide mutual assessment company, had adopted the same name as that of the local company, and contemplated that the assets, liabilities, books, records and files of the local aid company would be transferred to the statewide company. On the following day the local aid appointed Driscoll agent for the board to make the transfer or so much thereof as he might deem expedient. On October 16, 1933, fifteen days before Casstevens made application to the local company for a policy, the statewide company (Driscoll, president), then in process of qualifying to operate a statewide company business under article 4859f, adopted a resolution reciting that, inasmuch as it was contemplated that the assets, etc., of the local aid would in the near future be trans-

ferred to the statewide company in order to effect a merger, it was resolved by the statewide company that it receive all the "members, assets, liabilities, insurance, policies," etc., of the local mutual aid as and when the same, or any part thereof, were so transferred, and agreed to become bound and liable therefor.

It is inferable from the resolutions referred to that it was contemplated that policies issued at the time for issuance of the Casstevens policy were to be taken over and administered by the statewide company. As bearing upon the matter of placing the policy in the stipulated rate group, it appears that the statewide company qualified to do business six months after the policy was issued; that section 12 of the article under which it qualified (4859f) provides that no corporation operating under its provisions shall write "any policy or certificate of insurance unless the membership * * * or group * * * liable therefor shall be sufficient in number at the assessment rate charged to pay fifty per cent. (50%) of the maximum benefit * * *"; and further that in the event the membership in any group falls below fifty per cent. of the required number to pay such maximum benefit, the corporation shall notify the members, and that unless the membership is increased to such number within six months, steps shall be taken by the attorney general to bring about its liquidation.

The insurance commissioner granted, as of June 1, 1934, the statewide company its first certificate of authority to operate as such. Driscoll himself testified that the Group A policies, carried on the statewide company's books on cards, were a part of the full rate, or stipulated rate, group and that he designated them in his report to the insurance departments as class "S. R."; and also that the local company did not have sufficient (in number) members in Group A to pay fifty per cent. of the maximum benefit and that such group had never brought in the required fifty per cent. It is admitted by the company that in a report to the insurance commissioner "it was required to, and did, separate all its members into two divisions, namely, those who paid into the assessment plan and those who paid upon a stipulated rate plan" and that "the names of those paying on the stipulated rate plan were shown under the S. R. * * * list." If the company's view as to the group in which the Casstevens risk was carried is accepted, it was carried by the statewide association in a group which

would not produce the percentage of maximum liability required by law.

It is fair to assume under the facts that the Group A risks, including Casstevens, were carried by requirement of the insurance commissioner in a stipulated rate class. It can hardly be assumed that the commissioner would grant a permit to the company to administer a group of risks that were insufficient in number, and had never been sufficient, to bring in the amount required as a basis for the company's lawful operation.

We therefore overrule the company's contention that there is no evidence to support the jury's findings that the successor company maintained an "S. R." group and that the Casstevens risk was being carried in this group at the time of his death.

4. The only other contention with respect to the amount of liability necessary to discuss is that in consequence of the time of Casstevens' death liability is reduced to one-fourth of the maximum benefit. The basis of this contention is the following stipulation in the policy:

"If the insured shall within one year from the date of this policy, or from the date of any reinstatement after lapse thereof, die as a result of * * * any form of * * * heart disease, kidney disease, tuberculosis or cancer, then the company shall be liable only for one-fourth (1/4) of the amount provided herein. If the insured shall, within two years from the date of this policy, or from the date of any reinstatement after lapse thereof, dies as result * * * of" such diseases, "then the company shall be liable for only one-half of the amount provided for herein."

The policy provides substantially under the heading, "Lapses and Reinstatement," that failure to pay any regular quarterly or periodical dues within the time required shall cause the policy to lapse, and further that if reinstatement has not been effected as therein provided the member shall be expelled from the company and his insurance cancelled.

There is no evidence that the company ever lapsed or forfeited the policy. Nor is there any evidence of an application for reinstatement of the policy, or of membership, or of any proceedings relating to a reinstatement. As it was not established that the policy was forfeited and thereafter reinstated, the provision invoked by the company with respect to "death

within one year from the date of any reinstatement after lapse thereof," has no application, and the amount of liability is governed by the provision of the certificate with respect to the death of the insured within two years from its date. See McCorkle v. Texas Ben. Ass'n., 71 Texas 149, 8 S. W. 516; Wichita Home Ins. Co. v. Montgomery, 4 S. W. (2d) 1041; American Bankers Life Co. v. Barlow, 127 S. W. (2d) 1026.

There is supporting evidence for the jury's finding to the effect that the insured was in good health at the date of the policy. Dr. Cahill, Casstevens' family physician, who had known him for fifty years and attended him in his last illness, testified there was nothing wrong with his health at the time of the issuance of his policy; that his death resulted from heart failure (contributory cause, coronary occlusion) with which he was stricken on May 9th, 1935, prior to his death on July 3rd following; also that he had no heart ailment prior to the stroke, and that the "slight high blood pressure" which he had had for several years had nothing to do with his death.

The Court of Civil Appeals holds also that the evidence supports the jury's finding of good health, but interprets the finding of the term "good health" given in the charge to mean only that the insured "did not have such substantial infirmity or disease" as *increased the risk,* and holds as a matter of law, in view of the meaning ascribed to the finding, that the insured was not in good health.

5   The company had no assignment in its brief calling in question the trial court's definition of the term "good health"; and since the jury's findings, including that of good health, have substantial support in the evidence, they must be taken as true. We therefore overrule the company's contention that Casstevens was not in good health within the meaning of the policy when he received it, and that the Court of Civil Appeals did not err in rendering judgment in favor of the beneficiary.

For the reasons stated, the judgment of the Court of Civil Appeals, reversing and rendering the judgments below, is reversed and set aside, and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court October 15, 1941.

Rehearing overruled November 26, 1941.