**Elbert THOMPSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3520.**

Court of Civil Appeals of Texas.

Waco.

March 6, 1958.

Rehearing Denied April 17, 1958.

W. W. Mason, Mexia, Reed & Cannon, Grocsbeck, for appellant.

Bradley & Geren, Groesbeck, for appellee.

TIREY, Justice.

This is a condemnation case. The court submitted five issues to the jury and absent the burden of proof clause in each issue, they are substantially as follows:

1. What do you find was the market value of the ⅔ of an acre condemned by the State of Texas for highway purposes belonging to Elbert Thompson at the time it was condemned, considered as severed land, to which the jury answered $66.67.

2. What do you find was the market value of the defendant, Elbert Thompson's one acre of land, inclusive of the tract of land condemned, immediately before the tract was taken for highway purposes, to which the jury answered $3000.00.

3. Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by the defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the Thompson one acre tract of land, a portion of which has been condemned and taking into consideration the uses to which the tract condemned is to be subjected, what do you find was the market value of the remainder of the defendant's tract of land immediately after taking of the acreage condemned for highway purposes, to which the jury answered $3500.00.

4. What do you find was the market value of the 4.59 acres of land condemned by the State of Texas belonging to the defendant, A. J. Mallard and wife, at the time it was condemned, considered as severed land, to which the jury answered $100.00 per acre, total $459.00.

5. Do you find that the defendant, Elbert Thompson, at the time he bought said one acre of land knew or had notice of any fact which would have or should have, by the use of proper diligence, caused a reasonably prudent business man to make such an inquiry as might have disclosed that the exact location of said highway had been fixed widening the highway to the west, to which the jury answered "Yes, he did."

The court granted plaintiff's motion for judgment and the decree conformed to the verdict of the jury and decreed that Elbert Thompson, appellant herein, have recovery against Limestone County for the sum of $66.67, with interest at the rate of 6% per annum from March 27, 1956 until paid, as the market value of the 0.666(⅔) of an acre belonging to him out of the 5.036 acre tract condemned for highway purposes, said recovery being made subject to a vendor's lien in favor of A. J. Mallard as set out in the deed of Mallard and wife to Elbert Thompson, dated August 19, 1955, and further decreed that Mallard and wife recover of and from the plaintiff the sum of $459, with interest at the rate of 6% per annum from March 27, 1956 until paid, as the value of the 4.37 acres of land, being the balance of the 5.036 acre tract condemned by the State of Texas. The decree adjudged all costs against plaintiff. Mallard and his wife and Thompson excepted and objected to the judgment entered and gave notice of appeal to this court, but only Elbert Thompson perfected his appeal.[1]

1. Perhaps we should state that defendant and wife by deed dated August 19, 1955 conveyed approximately, more or less, one acre of land to appellant Thompson, out of a 36.9 acre tract adjoining the highway in question. The deed, among other things, contained the following provision: "It is understood and agreed between the parties hereto that the Texas State Highway Department intends

The judgment is assailed on six points. They are substantially that the court erred in overruling appellant's motion for new trial because (1) the jury's answers to Issues 1, 2 and 3 are not supported by the testimony and are so against the overwhelming preponderance of the evidence as to be wrong; (2) there is no evidence of probative force to support the jury's answers to Issues 1, 2 and 3; (3) that the jury was guilty of misconduct in that four members of the jury visited the premises involved during the trial of this case and before they reached a verdict, and brought in a verdict for values of the property not testified to by any witness in the case; (4) because the court refused to let counsel examine the jurors on the stand during the hearing on motion for new trial as to their conversations regarding the case with each other when they visited the property during the trial on the ground that it was hearsay evidence, and also denied appellant the right to interrogate such members of the jury as to what was said in the jury room regarding their visitation to the property; (5) the court erred in submitting Issue No. 5 because the only issue in a condemnation suit is the market value of the land taken and damages to that remaining as of the date of the institution of the condemnation suit; (6) the court erred in permitting condemners to plead a defense to condemnee's objections to the award of the special commissioners that have no bearing on the question of the market value of the land taken and the market value of the land remaining, as of the taking, be-

to widen the highway running along the east side of the tract herein conveyed, and the grantor herein agrees that if the said highway is widened by the State Highway Department, and said Department takes any of the land herein conveyed by reason of widening said highway, to deed to grantee herein on the west side of the tract herein conveyed to grantee an equal amount of land, taken for highway purposes." The record also shows that when the road was widened to the west, grantor Mallard conveyed to appellant Thompson an amount of land equal to that taken by the highway department, and that this was approximately ⅔ of an acre. The deed from Mallard to Thompson recited a consideration of $1500 cash and one note for the sum of $1750. There was also a provision in the deed to the effect that "grantor agrees not to sell any more of the 36.9 acre tract for the purpose of a beer tavern." The record also shows that the tract conveyed to Thompson was located near the dry counties of Freestone and Navarro and the dry city of Corsicana; that a beer site at this place would be the nearest one to the dry area to the north and east, and that the operator would have what might be termed a "first chance" to sell beer to those traveling such highway, coming from the dry counties. It appears that Thompson started constructing his building on the property in which to operate the beer tavern before the property was actually condemned, but there was evidence to the effect that the property had

been staked off, and that Thompson started constructing his building within some three feet of the center line stake of the new highway. Evidence was tendered into the record, although it was not permitted to go to the jury, that the County had paid Thompson $675 in cash to move the building off of the right-of-way, and that in addition thereto the County agreed to gravel and put entrance pipe into the driveway and fix and gravel a parking place at the new location. The County further agreed to move the fences back. Appellant Thompson testified that all of these things were done and that he was paid the sum of $675. It appears that it cost the County an additional sum of $528.71 to pour the concrete floor and put in the rock, which made a total of $1203.71 the County spent on moving appellant Thompson's building off of the highway, but, as stated above, the jury was not permitted to have this information. Appellant Thompson did not suffer any actual loss from the acreage condemned by the appellee because the grantor made good on the provision in the deed and conveyed to Thompson the exact amount of appellant's land that was condemned; however, the grantor did not question Thompson's right to recover the value of the ⅔ of an acre that was condemned, and although the record shows that Thompson was compensated to the extent hereinbefore stated, no issue was tendered in the court below, nor here, to the effect that Thompson did not have a justiciable interest.

cause the condemnation proceeding is purely a statutory proceeding and the statutes must be strictly followed.

■ Before discussing each of appellant's points, we think it is pertinent for us here to say that as a reviewing court it is our duty to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict and it is our duty in considering controverted issues of fact to accept as true that testimony which tends to support the verdict. 3-B Tex.Jur. 370–372. See also I. C. T. Insurance Co. v. Gunn, Tex.Civ.App., 294 S.W.2d 435 (n. r. e.) points 1–5 and cases there collated.

■ Since substantially all of the testimony tendered was opinion testimony as to value, it is pertinent for us to say that that character of testimony is but evidentiary and is never binding upon the trier of the facts. Opinion testimony does not establish any material fact as a matter of law. Hood v. Texas Indemnity Co., 146 Tex. 522, 209 S.W.2d 345, points 1–3.

Going back to appellant's point 4, which point is to the effect that the court erred in not permitting appellant to examine the jurors at the hearing on motion for new trial as to their conversations regarding the case with each other when they visited the property during the trial, the court basing his ruling on the ground that such testimony was hearsay.

Rule 327, Texas Rules of Civil Procedure, provides:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, or that a juror gave an erroneous or incorrect answer on voir dire examination, *the court shall hear evidence thereof from the jury or others in open court,* and may grant a new trial if such misconduct proved, or the testimony received, of the communication made, or the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

Appellant tendered as witnesses on the motion for new trial two ladies who were members of the jury. They were Mrs. Cooper and Mrs. Best. Because of the nature of Point 4, we think it is pertinent to quote the material part of the testimony of Mrs. Cooper and Mrs. Best.

Mrs. Cooper testified in part:

"Q. Mrs. Cooper, during the trial, I will ask you whether or not you * * * and while the trial was in progress, if you went up to this location of the Hilltop? A. I did.

"Q. On Highway 14? A. The court had not given me instructions that I was not to.

"Q. Now, how many times did you go, please, ma'am? A. One time.

"Q. One time. And when was that? A. I don't remember the exact day.

"Q. Was it this week or last week? A. I am sure it was this week. * *

"Q. You think it was this week. Now, who was with you, please, ma'am? A. Sir, I had rather answer for myself and not for someone else. I told you that I went there, but as to who was with me, I will let the Judge * * *

"Q. Well, let me ask you this, did another juror go with you? A. That is the same question, Mr. Mason, I will answer for myself.

"Q. I am entitled to find out * *"

The court sustained appellee's objection to this question and held that the witness

was not required to answer. Thereupon counsel for appellant asked the privilege of making a bill, which was granted, and thereupon the objection was withdrawn and thereafter the witness testified:

"A. I should answer is that correct? Yes, there was other people with me.

"Q. On the jury? A. Yes.

"Q. Now, who were they, please, ma'am? A. Do I have to answer that too?

"The Court: Yes.

"A. Mrs. Neal and Mrs. Best. * *

"Q. Now, when you went was that after you had been in the courtroom here during the day? A. Yes, sir.

"Q. And you went after court adjourned in the afternoon and before you came back the next day? A. That is correct.

"Q. When you were up there you looked at the Hilltop Tavern, did you not? A. How could I keep from it if I was up there?

"Q. And you observed the new highway? A. I couldn't keep from seeing it.

"Q. And you went up there for that purpose? A. No, I can't say that I went up there directly for that purpose. I can ride up the highway.

"Q. You went up there that afternoon with some of the jurors to see the Hilltop and what it looked like, didn't you? A. We drove up there * *

"Q. And you went to see what it looked like? * * * A. I don't know that I can say that it was. * *

"Q. Could you say that it was not? A. I don't know that I could say that it was not.

"Q. While you were up there did you observe the tavern? A. Well, I just said if I was up there I couldn't help but observe it.

"Q. And you looked at the road under construction? A. Well, I couldn't help but see the road.

"Q. And you looked at the entrance into the tavern? A. Well, I could see it was there, Mr. Mason.

"Q. And you could also see Mr. Mallard's land that that acre was cut out of? A. I certainly could not keep from seeing anything that was up there.

"Q. Whose car were you in when you went up there? A. In my own automobile. * * *

"Q. Mrs. Cooper, when you went up there and looked the place over, did you see anything different from the pictures and maps and drawings that have been introduced in this case? * * * A. I did not. If it pleases the court, I would like to say that my bringing a verdict in this case was according to the instruction of the Judge. * * * And I based my opinion on the verdict. * * * I mean the evidence as it was produced in this courtroom as I was told to, and the pictures * * *"

Appellant next tendered Mrs. Best as his witness. We quote the pertinent parts of her testimony:

"Q. Mrs. Best, did Mrs. Cooper take you and Mrs. Neal, members of the jury in this case, up to the property of the Hilltop last Monday afternoon. * * * A. I can speak for myself, I was there.

"Q. Did you go in Mrs. Cooper's car. * * * A. Yes, sir, I did.

"Q. And was Mrs. Neal, another member of the jury, along with you? A. Yes, she was.

"Q. Now, did you go up there Monday afternoon after court adjourned

* * * A. It was after we were dismissed, recessed from court, yes, at 5 o'clock.

"Q. And you returned the next day and finished the case the next day? A. Yes, sir.

"Q. Did you go up there any other time during the trial of this case besides that time? A. I didn't go up there, but I had occasion to go by with Mr. Best on Sunday afternoon. He had to make a business trip up northeast of Corsicana and I drove along the highway and back * * *

"Q. Now, when you and Mrs. Neal and Mrs. Cooper went up there on Monday afternoon, did you stop the car up there? A. Yes, I believe we did.

"Q. And did you all look at the Hilltop Tavern? A. I did.

"Q. Did you look at the road? A. Not noticing any of the particulars, but I saw it * * *

"Q. All right, I will ask you, Mrs. Best, speaking of the road you were looking at, is that the new highway that is being built and runs in front of the Hilltop? A. Well, I saw it.

"Q. And the entrances that I was speaking of a moment ago, they are the entrances off that road into the Hilltop property? A. Yes, I saw those up to the Hilltop property, yes.

"Q. And you saw Mr. Mallard's property out of which this one acre was cut just north of it? A. I saw it but I paid no particular attention to it.

"Q. And you did observe the new road that was being built? A. Yes.

"Q. And Mrs. Best, while you were there looking at the property, did anyone make any observation about the condition of the property? * * *"

The court sustained objection to this question, to which appellant's counsel said:

"Note an exception." Appellant's counsel made no request to perfect his bill and show what conversation or observation took place between Mrs. Best, Mrs. Cooper and Mrs. Neal.

We think this record shows conclusively that appellant's counsel was allowed to interrogate fully Mrs. Cooper. It is true that she was an unwilling witness, but she answered each of the questions that the court instructed her to answer, and we think it is also pertinent here to say that appellant's counsel did not ask Mrs. Cooper or Mrs. Best any questions concerning what was said, if anything, in the jury room while they were considering of their verdict about what they saw at the time they went out to visit the location of the property here involved, nor as to any conversation they had up there. No other juror was tendered as a witness.

In view of the foregoing condition of the record, we are of the view that appellant has wholly failed to bring himself within the rule announced by our Supreme Court in Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644, points 2–4 and 5. The rule there announced by our Supreme Court has not been changed. See Jones v. Elliott, Tex.Civ. App., 259 S.W.2d 288, points at pages 294 and 298. See also Per Curiam opinion of our Supreme Court in same cause in 153 Tex. 68, 263 S.W.2d 250. Needless to say that under the record here before us, we cannot presume that the trial court would have refused appellant the right to complete his bill of exception taken with reference to Mrs. Best's failure to answer the above question. Needless to say it was error for Mrs. Cooper and Mrs. Best and Mrs. Neal to go to the location of the property for the purpose of viewing it, but since appellant did not perfect his bill as to what these jurors did or what they saw or what discussions or comments were made by them while they were there, we cannot say that such conduct constitutes reversible error as a matter of law. Moreover, there is no showing that these jurors'

visit to the location of the property and what they did and saw while there was a subject of discussion while they were considering of their verdict. It was appellant's duty to perfect his bill of exception. See McCormick & Ray Texas Law of Evidence, p. 25, par. 20; McAuley v. Harris, 71 Tex. 631, 639, 9 S.W. 679; Shippers Compress & Warehouse Co. v. Davidson, 35 Tex.Civ. App. 558, 80 S.W. 1032; Martinez v. Pena, Tex.Civ.App., 139 S.W.2d 337, point 5; see also City of Corsicana v. Marino, Tex. Civ.App., 282 S.W.2d 720, points 3 and 4; 3A Tex.Dig. Appeal & Error 

Rule 434, T.R.C.P., in part provides: " * * * no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court * * *." Our Supreme Court has consistently given effect to this provision of the foregoing rule. See Childers v. Texas Employers Insurance Ass'n, 154 Tex. 88, 273 S.W.2d 587, at page 588.

Since the appellant has failed to bring himself within the rule announced in Roy Jones Lumber Co. v. Murphy, supra, we believe the foregoing provision of Rule 434, supra, is applicable here and that the failure of the appellant as here pointed out requires us to affirm this cause.

 Appellant complains that the court committed reversible error in submitting Special Issue No. 5. Since the evidence is without dispute, as disclosed by the deed from Mallard to appellant Thompson, that the highway would be widened, we see no reversible error in giving such special issue, although it was not necessary or controlling to the disposition of the cause.

We have considered each of appellant's assigned errors and we are of the view that the evidence is sufficient to support the answers of the jury to each of the issues submitted and that none of appellant's points presents reversible error and each is overruled.

Accordingly, the judgment of the trial court is affirmed.