Billy B. WILLIAMS, Appellant,

v.

Roscoe S. BERRY et al., Appellees.

No. 16474.

Court of Civil Appeals of Texas.

Dallas.

March 19, 1965.

Rehearing Denied April 9, 1965.

Matthews & Matthews, and John D. Gilliland, Dallas, for appellant.

Touchstone, Bernays & Johnston, and Wade C. Smith, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

Billy B. Williams appeals from a "take nothing" judgment based on a jury verdict in a suit for personal injuries to his wife, Rosemary Williams, growing out of an automobile collision which occurred on March 20, 1962 in the City of Dallas, Texas. Appellant alleged that his automobile, being driven by his wife, had been negligently struck from the rear by a pickup truck owned by Berry Brothers Machinery Company and being driven by their agent, servant and employee, William Arthur Wright. Appellees responded by pleading various acts of contributory negligence against Mrs. Williams and also pleading that the collision was the result of an unavoidable accident.

In answer to special issues submitted to them the jury found that Wright, the driver of appellees' pickup truck, did not fail to keep a proper lookout; that he was not following the Ford Falcon station wagon driven by Rosemary Williams more closely than a reasonably prudent man would have done under the same or similar circumstances; that he did not fail to timely apply the brakes on the pickup truck; that he was not operating the pickup truck at a greater rate of speed than that which a reasonably prudent man would have driven the same under the same or similar circumstances; that he did not fail to sufficiently turn the pickup truck to the right in order to avoid the collision. The jury also found that Mrs. Rosemary Williams did not fail to keep a proper lookout; that she did not stop the vehicle which she was operating suddenly; that she did drive her Falcon station wagon into the path of the Chevrolet pickup truck driven by Wright, but that such act was not negligence. The jury found that the collision was the result of an unavoidable accident. It was also found that reasonable medical and hospital bills was the sum of $495.20 and that reasonable compensation for Mrs. Williams' pain and suffering was $1,500.

Seeking to reverse the judgment, appellant presents thirty points of error. In his brief appellant compresses these points into three main groups: (1) that the jury's answers to the various issues relating to acts of negligence are not supported by sufficient evidence and are so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust; (2) that there is no evidence of any probative value to support the jury's answers to the various issues of negligence; and (3) (a) there is no evidence, or insufficient evidence, to support the jury's answers to the damage issues, and (b) that the jury was guilty of numerous acts of material misconduct which resulted in an unfair verdict and harm to appellant. Following a careful study of all of appellant's points we find the same to be lacking in merit and overrule them.

■ Appellant's "no evidence" points of error present a question of law, that is, whether the evidence in this record, as a matter of law, requires a conclusion contrary to the verdict of the jury. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W. 2d 609, 23 A.L.R.2d 1114. In reviewing these points we are governed by the rule that if there is any evidence of probative force to support the jury finding, such finding is conclusive and binding on us. A review of the record in this case demonstrates that there is, indeed, evidence of probative force to support the jury's answer to each question submitted to and answered by them. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ Our consideration of appellant's points wherein he challenges the answers of the jury to the liability issues as being without support in the evidence or "contrary to the great weight and preponderance of the evidence" presents a question of fact, as opposed to one of law, and requires us to resolve such question of fact by weighing

all of the evidence in the case, including the evidence which supports the verdict and also the evidence which is contrary to it. In re King's Estate, supra.

In compliance with this rule we have examined and weighed all of the evidence presented, consisting of 624 pages of testimony, a full volume of exhibits, and 42 pages of testimony given on hearing of motion for new trial. We deem it essential to briefly summarize the essential portions of the testimony which reflect light upon the issues in question.

The scene of the accident was the intersection of Cadiz and Pearl Streets in the City of Dallas, Texas. At this point Cadiz Street runs generally East and West and is designated as a "one-way" street for traffic traveling East. Pearl Street runs generally North and South. Cadiz Street is divided into four lanes of traffic, marked with white lines in the street. Traffic control signal lights are located on each corner of the intersection. In the block of Cadiz Street west of Pearl there are situated a number of wholesale produce concerns and the testimony reveals that large trucks habitually park in angular positions on each side of Cadiz Street in front of these produce houses, such parking being done in such a manner as to block at least two lanes of traffic on Cadiz Street. The accident occurred in the morning hours of March 20, 1962. At that time appellant's wife, Rosemary Williams, driving a 1960 Ford Falcon station wagon, and being accompanied by Rose Marie Redding, was proceeding in an easterly direction on Cadiz Street when she was struck from the rear by a 1957 Chevrolet pickup truck owned by Berry Brothers and operated by appellee William Arthur Wright, an employee of Berry Brothers, who was at that time acting within the scope and course of his employment for such concern. At the time of the accident no rain was falling but rain which had previously fallen had caused the pavement to be wet or damp. The facts relating to the events which transpired immediately prior to the collision are in sharp conflict.

Mrs. Rosemary Williams testified, both by deposition and in person, that she was proceeding in an easterly direction on Cadiz Street and that she drove up to the intersection with Pearl Street and came to a stop for a red light; that she had been stopped approximately five seconds before the collision occurred. She did not see the pickup truck prior to the collision. She denied that she had passed the pickup truck immediately before she came to a stop at the red light. She said that following the collision Wright told her that the reason he struck her was that his brakes went out. She testified that there was only one lane of traffic available on Cadiz Street due to the parked trucks on either side of the street. Mrs. Redding, a passenger in Mrs. Williams' automobile testified to the same state of facts as related by Mrs. Williams. Herman Coleman, a witness for appellant, testified that he was an employee of one of the produce companies at the location of the accident and that at the time of the collision he was standing facing Cadiz Street approximately 20 to 25 feet west of the intersection of Pearl and Cadiz, on the south side of Cadiz Street. He testified that the two outside lanes, on the north and south sides of Cadiz Street, were materially blocked by trucks which had backed into the produce companies on either side of the street. He said that he saw the Falcon automobile drive up to the red light and come to a stop and was there from three to five seconds when the Chevrolet pickup truck collided with the rear of the Falcon. He did not see the pickup truck before the collision. He said that there was no room in the street for Mrs. Williams to have passed the pickup truck before the collision. Police Officer Charles L. Palmer investigated the accident after it happened. He testified that the only way he could determine the point of impact between the automobiles was by having the same pointed out to him by both Mr. Wright and Mrs. Williams; that they both indicated that the point of impact was approximately in the center of Cadiz Street and about 20 feet west of Pearl Street. He said that Wright

told him that the reason he struck the Falcon was that he could not stop it in time. He said that Wright made no statement to him concerning the fact that the Falcon cut suddenly in front of him and stopped. He also testified that the outer lanes of Cadiz Street were blocked by trucks parked at the produce houses.

Appellee William Arthur Wright, a colored man forty-six years of age, with an eighth grade education, and who had worked for Sherman Berry and Roscoe Berry for eighteen years, testified that he was driving the pickup truck, pulling a compressor, and going East on Cadiz Street. He said he was traveling between five and ten miles per hour and saw the light at Pearl Street change to "Caution" whereupon he began the application of his brakes. At this point, he saw the Ford Falcon station wagon pass him on his left and the station wagon stopped suddenly in front of him. He said that he applied his brakes but due to the wet pavement his automobile slid into the Falcon. He said his left front collided with the right rear of the station wagon but did not cause a very hard impact. He estimated that he was going between two and three miles per hour when the accident occurred. He identified Defendants' Exhibit 3, being a photograph of Cadiz Street looking East towards the intersection where the collision occurred. This photograph demonstrates clearly that Cadiz Street consists of four well-marked lanes of traffic and that approximately two lanes of this traffic are blocked by the trucks parked on either side, leaving a space equivalent to approximately two lanes of traffic for vehicles to travel. It is also undisputed that for a distance of some 20 to 30 feet west of Pearl no trucks or vehicles are allowed to be parked, thereby leaving all four lanes open for that distance.

The only physical damage to the pickup truck driven by Wright was the breaking of a parking lens which cost $1.75 to repair. A picture of the Falcon station wagon was introduced in evidence and reveals the only damage to be a very slight dent on the right rear portion thereof which had not been repaired.

From this evidence appellant argues forcefully that appellee Wright tells an incredibly impossible story concerning the Falcon station wagon passing him on his left immediately prior to the collision and therefore we must say, as a matter of fact, that the verdict based upon such testimony must be set aside. The *sine qua non* of appellant's argument is the physical impossibility of the happening of the accident as related by appellee Wright. While it is true that a reading of this testimony from the cold pages of the statement of facts might cause us to believe that, had we been sitting on the jury in this case, we would have rendered a different verdict. This, however, is not the test to be applied, since we are not authorized to substitute our findings of fact for those of the jury. 4 Tex. Jur.2d § 832; King v. City of Dallas, Tex. Civ.App., 374 S.W.2d 707. Appellate review of such questions is a difficult task but in arriving at a solution thereof we are governed by the well established rule of law in Texas that where the evidence is conflicting, a reviewing court will not disturb the jury's verdict if there is evidence of probative value to support them unless the evidence is so overwhelmingly against the verdict or findings of the jury as to shock the conscience of the appellate court or to demonstrate clearly that the conclusion reached by the jury was manifestly unjust or was the result of passion, prejudice or improper motive. 4 Tex.Jur.2d, § 837, and cases therein cited.

Having carefully and conscientiously studied the entire record in this case within the purview of the rules of law announced above we find ourselves unable to agree with appellant that the verdict of the jury in this case is so contrary to the overwhelming weight of the testimony as to fall within the rule above recited. The record reveals that the case was tried for seven days during which time all of the facts and circumstances were presented to

a jury which had the full and complete opportunity to see and observe all of the witnesses and to inspect the physical evidence introduced. The jury, as in every intersection collision case, heard conflicting evidence, resolved such conflicts, and evaluated the credibility of the various witnesses. Based upon all the evidence, both direct and circumstantial, they elected to believe Wright and disbelieve the other witnesses. There is nothing in the record to demonstrate that the jury was guilty of bias or prejudice against appellant and his wife. The jury found that neither party to the accident was guilty of negligence proximately causing the collision in question, but that the same was the result of an unavoidable accident. This finding is amply supportable by the wet and slippery condition of the street on the occasion in question. Nor can we agree with appellant's contention that the story of appellee Wright was either incredible or impossible. Defendants' Exhibit 3, being the photograph of the scene of the accident, clearly demonstrates that it was indeed possible for the Williams car to have been driven past the pickup truck within the space in the street between the parked trucks.

■ In his final group of points appellant first contends that the answers of the jury to the damage issues are contrary to the great weight and preponderance of the evidence and therefore grossly and manifestly inadequate. While it is true that appellant introduced testimony relating to hospital bills, doctor bills and other medical expenses amounting to a total of in excess of $5,000, and the jury found that the sum of $495.20 was the reasonable amount of such expenses, such finding may not be disturbed by us for the simple reason that the record is replete with conflicting testimony as to the injuries sustained by Rosemary Williams in this accident. The medical testimony is conflicting as to her disability and the jury was entirely justified in deciding that appellant was not entitled to recover the full amount sought. Moreover, in any event, since the jury found no liability to exist against appellees, the damage issue becomes immaterial. Shiflett v. Bennett Printing Co., Tex.Civ.App., 330 S.W.2d 220; Martin v. Jenkins, Tex.Civ.App., 381 S.W. 2d 115; L. B. Foster Steel Co. v. Moorhead, Tex.Civ.App., 382 S.W.2d 280.

■ In the second part of appellant's final group of points he argues that jury misconduct occurred which requires reversal of the judgment. This contention must be overruled for several reasons. In the first place the trial court heard testimony relating to jury misconduct and, following such hearing, rendered findings of fact and conclusions of law contrary to appellant's position. We have examined the evidence and find that the court's findings and conclusions are amply supported by the evidence and therefore may not be disturbed by us. Dallas Transit Co. v. Newman, Tex.Civ.App., 380 S.W.2d 818. Appellant frankly concedes that none of the acts that he contends to be jury misconduct would constitute such misconduct which would be calculated to cause, and in all probability did cause, the rendering of an unjust verdict. He seeks to say, however, that the combined effect of all of the alleged acts of jury misconduct constitute error. We have given careful consideration to this contention and, finding the same to be without merit, it is overruled.

The judgment of the trial court is affirmed.

Affirmed.