**Alex Ignac STAHA, Appellant,**

**v.**

**Lee I. MITCHELL, Appellee.**

**No. 10423.**

Court of Civil Appeals of Texas.

Austin.

Oct. 24, 1956.

Rehearing Denied Nov. 14, 1956.

Sedberry & Williams, San Angelo, for appellant.

Sutton, Steib & Barr, San Angelo, for appellee.

GRAY, Justice.

Appellant has appealed from a judgment, rendered on a jury's verdict, awarding appellee a recovery for property damage sus-

tained when appellant's and appellee's automobiles collided.

The collision occurred in or near the intersection of 21st Street with the Robert Lee Road within the corporate limits of the city of San Angelo. Robert Lee Road is a paved highway and at the place of the collision runs north and south. The pavement is about twenty feet wide with a stripe in its center. Also at or near the site of the collision the Road has shoulders on each side about eleven feet in width. At the time appellee's automobile was being driven by his son Larry Mitchell who was driving south at about forty miles per hour. Appellant was driving north on said Road, the collision occurred at about 6 o'clock p. m., the drivers were alone in the respective cars and it appears there were no other vehicles traveling the Road at or near the site of the collision at the time it occurred.

Appellee's automobile was a Ford two-door sedan and it was struck behind the door on its right side. The damage to appellant's automobile appears to have been to its front end.

The collision occurred on appellant's side of the Road. There were no eye witnesses and only appellant and Larry Mitchell testified to the facts leading up to the collision. There was however further testimony as to the skid marks made by each automobile.

Larry Mitchell testified that he was driving on his own right-hand side of the Road when he first saw appellant about two blocks away and then on his own right-hand side of the Road; that when appellant was about 150 feet away Larry noticed that appellant, without giving any signal of his intention to turn left, started veering over to his (Larry's) side of the Road; that

"* * * he was coming to my side of the road—it was steady, steadily coming to my side of the road—wasn't weaving back and forth."

Larry said he blew his horn once and

"Well, the next thing I did was try to avoid him. I saw that he wasn't going to move back to his side of the road, and there was a car waiting at this intersection, right here; it was stopped waiting at the intersection, and there's a pole, I believe setting right about in this position, and I was going to take to the right of the road, but I wasn't sure if I could, because of the car, also the fact he was steadily coming to my side of the road; I thought if he was steadily coming he might come over all the way and even if I went over to the other side of the road he still might come over, all the way off the road. * * * I took to my left; I crossed my lane to get out of his way and almost instantly, just about a second before the accident occurred, maybe longer, he saw me and immediately when he saw me he cut his wheels back to his own side of the road. When I saw that I just cut my wheels as sharp as I could and right then it happened. The car—point of impact, I guess, was in a position like that."

Larry further said that he was not sure whether he applied his brakes; that just prior to the collision he thought he had his foot on the accelerator "trying to get out of the way" and that after blowing his horn

"First thing I did, I stayed on my side of the road because I thought, I didn't know if he didn't see me or what; I stayed on my side until I thought he wasn't going to get back on his side. All I could do then is try to avoid him; I thought the only alternative was to go to my left side of the road."

Appellant testified that he did not hear Larry's horn and said:

"I got in my car and started out the Robert Lee highway which is about

two, two and a half blocks from there, and on the way going there I reached over to the, my left; I wasn't conscious of what I did, but I believe I reached over to the glove compartment to reach for a match, for I smoke, and as I did, reach over, why, I just pulled over a little bit over the line, and looked up and jerked right back to my right; I seen Mr. Mitchell approach me; of course, he was sliding towards me and all I could do is just apply on my brakes, and I was inside my line, completely on the right hand side after the wreck happened, and so when the impact of the car happened I was almost to a stop, and he skidded sideways towards me, and it turned his car around and threw him off of the pavement in the bar ditch, I guess about 25 feet; so I estimate he was going pretty fast; I didn't know what else to do but just stop. I was almost stopped when he hit me."

In answer to issue 15 the jury found that after he discovered appellant's automobile was being driven on the wrong side of the road Larry Mitchell did not fail to slow down his car as promptly as a reasonably prudent person would have done under the same or similar circumstances. The jury was instructed that if issue 15 was answered that "he failed" then to answer issue 16 which asked if such failure was a proximate cause of the collision. Issue 16 was not answered.

Appellant here complains of the jury's answer to issue 15 and the failure to answer issue 16 in the affirmative. He says:

"All of the Points of Error involve only two points: The first is that the evidence, as a matter of law, showed that the answer of the jury to Special Issue No. 15 should have been affirmative; and, therefore, the jury should have answered Special Issue No. 16 in the affirmative.

"Second, the verdict of the jury in answer to Special Issue No. 15 was

contrary to the great preponderance of the evidence; and the answer of the jury to Special Issue No. 16 was contrary to the great preponderance of the evidence."

We have set out the testimony of Larry Mitchell and appellant relating to their respective versions of the facts as to how the collision occurred. It is not our province to resolve conflicts in the testimony set out by us or found in the record but we must determine whether issues of facts are presented upon which reasonable minds may differ. If such issues are presented then it was proper for the trial court to submit such issues to the jury.

"The driver of a vehicle, if acting within the limitations of article 801(A) of the Penal Code, may drive on the left-hand side of the highway, and whether so driving constitutes negligence is a question of fact. If so driving is not negligence, but he fails to exercise ordinary care in returning to the right side to avoid a collision with a vehicle, such failure would constitute an act of negligence separate and distinct from driving on the left side, * * *." McClelland v. Mounger, Tex.Civ.App., 107 S.W.2d 901, 904. Er. dism. by agreement.

Here each driver crossed to his left side of the Road prior to the collision and it then became the duty of the jury to determine from the evidence who was negligent, or, as issue 15 inquired, determine whether Larry Mitchell failed to slow down his car as promptly as a reasonably prudent person would have done under the same or similar circumstances.

In Rutowsky v. Mueller, Tex.Civ.App., 274 S.W.2d 862, 863, no writ history, the Court considered facts substantially as follows:

"Plaintiff was operating her automobile with due caution, at a lawful

rate of speed, in the east lane of said highway, when she observed an automobile driven by appellee some distance ahead, parked on the east shoulder of the highway. When plaintiff had reached a point some two hundred yards south of the parked automobile she observed it beginning to move and proceed upon the paved portion of the highway. The roadway being clear of approaching vehicles, plaintiff sounded her horn and turned her automobile into the west traffic lane intending to pass appellee on the left or west side. After she had turned into the west lane, appellee's automobile proceeded diagonally across the highway and into the west lane, directly in front of plaintiff. She immediately steered her automobile to the left, away from appellee's automobile, but was unable to turn it sufficiently, in the remaining available space, to avoid a collision."

The Court said:

"These facts presented a question for the jury as to whether or not appellant was guilty of negligence in not reducing her speed rather than in attempting to pass appellee on the left-hand side. In determining whether or not there is sufficient evidence to support the finding of the jury, we must view the evidence in the light most favorable to appellee. When this is done, the evidence justifies the conclusion that appellee was driving diagonally across the road 100 yards in front of appellant when she discovered his perilous position. It is a question of fact to be decided by the jury, whether or not under such circumstances appellant should have reduced her speed. This the jury has decided against her upon sufficient evidence."

Clearly we think there was an issue of fact presented, that the issue was determined by the jury by the answer to issue 15, and having found that Larry Mitchell did not fail to act as a reasonably prudent person there was no occasion to answer issue 16.

The jury answered issue 15 from a preponderance of the evidence which was defined by the trial court in the charge as "the greater weight or degree of credible testimony before you." This instruction required the jury to find their answers from the evidence of the greatest convincing force to them and left them free to test the weight of the evidence and to accept or reject it. By the answer to issue 15 the jury accepted the version of Larry Mitchell and rejected that of appellant. This was within their province to do. In answering appellant's first point the test is: Was there evidence of probative value sufficient to support the jury's answer? We hold there was.

What we have said disposes of appellant's first point however his second point presents a fact question and requires us to consider all of the evidence and determine whether the jury's answer to issue 15 and its failure to answer issue 16 "is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the" answer and the failure to answer. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

We have set out the testimony of the drivers of the two automobiles giving their respective versions of the facts leading up to the collision and how it happened. Each gave his reactions to the situation then confronting him and Larry Mitchell gave his reasons for turning his automobile into appellant's lane. It is to be noted that Larry is corroborated to the extent that appellant himself said that he pulled over the center line, looked up and "jerked" his automobile back to his right. Larry also said that a third automobile (then at

an intersection) and a pole was considered by him when he concluded that his only alternative was to go to his own left side of the road. This evidence as to the third automobile and the pole is not disputed. Larry did not say that he slowed his speed but said he acted in an effort to avoid appellant.

Viewing all of the evidence (that of appellant and that of appellee) and applying to it the test applied by the jury the answer of the jury to issue 15 is not contrary to the great preponderance of the evidence. If the jury's answer to issue 15 is sustained then its failure to answer issue 16 must also be sustained.

Appellant's points are overruled and the judgment of the trial court is affirmed.

Affirmed.