SAN ANTONIO BANK & TRUST,
Appellant,

v.

M. B. PLETZ, Appellee.

No. 16135.

Court of Civil Appeals of Texas,
San Antonio.

July 11, 1979.

Rehearing Denied Sept. 25, 1979.

Mitchell S. Rosenheim, Schenker, Rosenheim & Schenker, San Antonio, for appellant.

Lewin Plunkett, Wiley, Plunkett, Gibson & Allen, San Antonio, for appellee.

## OPINION

CADENA, Chief Justice.

Plaintiff, San Antonio Bank & Trust (Bank), filed this suit to recover on a promissory note executed by Pletz Building Systems, Inc. (Systems). Bank also sought to recover from the other defendant, M. B. Pletz, alleging that he had guaranteed payment of the Systems note. The trial court granted judgment in favor of Bank against Systems but, based on the jury findings, denied Bank any recovery against Pletz. Bank appeals from that portion of the judgment absolving Pletz from liability as guarantor.

Pletz was engaged in the construction business, doing business under the name of Pletz Construction Company, unincorporated, of which he was the sole owner. He also owned 55% of the capital stock of Systems and was the president and chief executive officer of that corporation.

In September, 1974, Systems was indebted to Bank on a promissory note, in the original amount of $34,000.00, which was in default. This note had been signed by Pletz as president of Systems. At that time, and for some time previously, Pletz had maintained a checking account with Bank under the name of Pletz Construction Company. During the testimony, this account was referred to by the witnesses, including Pletz, as the "Pletz personal account," and it will be so designated in this opinion.

On September 27, 1974, Bank, exercising what it refers to in its brief as its "right of offset," withdrew all funds then on deposit with Bank in the Pletz personal account and credited such amount ($27,833.00) to the payment of the Systems note, reducing the

unpaid balance on such note to $2,799.43. Bank notified Pletz of its action and demanded that Pletz pay the balance.

Pletz immediately discussed the matter with Bank officials. As a result of these discussions, Kenneth Semlinger, one of Bank's employees, prepared a "renewal note," in the principal amount of $30,000.00, dated September 30, 1974, evidencing a loan in that amount to Systems. Pletz signed this note on October 1, 1974, in his capacity as president of Systems. On the same date, Pletz signed a "guarantee agreement" in his individual capacity. This instrument was also prepared by Semlinger on a form then used by Bank. In the blank provided for insertion of the name of the principal debtor whose obligation was being guaranteed by the person signing the instrument Semlinger wrote "M. B. Pletz." As a result, the instrument, as written by Semlinger and signed by Pletz, purports to be a guarantee by Pletz of payment of all obligations and indebtedness owed by him to Bank.

The proceeds of the loan evidenced by the 1974 note were used, with the exception of the amount required to satisfy the unpaid balance of the Systems note then in default, to restore the Pletz personal account to its status prior to the exercise by Bank of its right of "offset" on September 27, 1974.

Systems defaulted on the 1974 renewal note and on July 18, 1975, Pletz, acting in his capacity as president of that organization, executed a second renewal note, in the principal amount of $25,000.00, the unpaid balance on the 1974 renewal note. This second renewal note bore the notation that its payment was secured by "Assignment of $16,000.00 CD" and by "Letter of Guarantee dated 10/1/74." A similar statement was contained in the "Loan Disclosure Statement," a copy of which was delivered to Pletz by Bank. Pletz signed this statement, as president of Systems, acknowledging receipt of such instrument. On the same date Pletz executed, as president of Systems, an instrument captioned "Security Agreement-Pledge" in which the "collateral" was described as "Assignment of $16,-000.00 CD & Letter of Guarantee dated 10/1/74." On that date, the certificate of deposit mentioned in all three instruments was in the possession of a bank in Austin, apparently as security for a loan. The evidence establishes that such certificate was never delivered to Bank.

The evidence indicates that the certificate of deposit was owned by Pletz. In addition, Pletz testified that he agreed to assign future proceeds from two construction contracts to Bank. These contracts related to construction work then being done by Pletz individually, under the name of Pletz Construction Company, not by Systems. The agreement concerning such proceeds was that Pletz would have future checks made payable to him and Bank jointly.

This suit was filed following default by Systems in payment of the 1975 renewal note.

The judgment in favor of Pletz is based on the negative answers of the jury to special issues 1 and 2. The first issue inquired whether Pletz and Bank intended that the October 1, 1974, guarantee signed by Pletz individually would operate as a guarantee by Pletz of the September 30, 1974, Systems note. The second issue inquired whether the insertion in such agreement of the words, "M. B. Pletz" instead of the words "Pletz Building Systems, Inc.," was the result of "a mutual mistake of the parties."

Bank urges that the negative answers to the two special issues are so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

Many phrases have rolled from the judicial tongue in describing the role of a reviewing court in passing upon "no evidence" and "insufficient evidence" or "against the great weight and preponderance of the evidence" points. No particular problem exists where appellant insists that there is no evidence to support the jury finding or that the evidence conclusively establishes the contrary of the finding. In such a case, the appellate court, considering only the evidence favorable to the verdict,

must overrule the point if, to use the stock phrase, "there is any evidence of probative force to support [the] finding." *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The determinative test is whether, when the evidence is so considered, "reasonable minds could differ." *Id.* It is only where the conclusion is that reasonable minds could not differ that the appellate court will hold that there is no evidence to support the finding or that, as a matter of law, the evidence requires a conclusion contrary to the jury finding.

According to *King*, an "insufficient evidence" point, or a point urging that the finding is against the overwhelming weight and preponderance of the evidence, requires

> the Court of Civil Appeals . . . to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some "evidence of probative force" in support of the verdict. . . . The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict.

244 S.W.2d at 661.

The *King* opinion, in what is perhaps a deliberate understatement, recognizes that it is "not simple to describe the intellectual process to be followed by the Court of Civil Appeals in passing on the fact question—to specify just how a verdict may be supported by evidence of probative force and at the same time be on all the evidence so clearly unjust as to require a new trial." *Id.* at 662. The reason why a description of the required mental gyrations is "not simple" is that a finding of some evidence of probative force to support the verdict is necessarily a finding that, based on such evidence, reasonable minds would be justified in reaching the same conclusion as did the jury. "It is drawing a rather fine line to say that the verdict was one which reasonable minds could reach, but at the same time

was clearly the product of something other than reason." Garwood, *The Question of Insufficient Evidence on Appeal*, 30 Texas L.Rev. 803, 813 (1952).

On what basis may a court say that although reasonable minds would be justified in finding as did the jury, the verdict is so manifestly unjust as to establish that it was the result of such passion and prejudice as to shock the judicial conscience? Justice Garwood points out that, "despite innumerable categorical statements suggesting the contrary, it seems that the power of . . . the court of civil appeals to weigh the evidence for the purpose of granting or refusing a new trial necessarily entails judging, to some degree at least, even the credibility of the witnesses." Garwood, *supra*, at 810–11.

The conclusion that, although . the verdict is supported by some evidence of probative force, it must, nevertheless, be set aside and a new trial granted need not, and normally does not, rest on "extrinsic" evidence indicating bias. *But see Barboza v. Service Mut. Ins. Co.*, 125 S.W.2d 1095 (Tex. Civ.App.—Austin 1939, writ dism'd judgmt. cor.). The conclusion is reached solely by consideration of the evidence and the finding which purports to be based on such evidence.

In *Missouri Pacific Ry. Co. v. Somers*, Justice Gaines, after pointing out that an instructed verdict or rendition of judgment n.o.v. would not have been proper in the case because of the existence of some evidence of probative value, nevertheless reversed and remanded because the verdict was against the weight and preponderance of the evidence. 78 Tex. 439, 14 S.W. 779 (1890). He pointed out that plaintiff's evidence was contradicted by the testimony of two disinterested witnesses and that plaintiff had given inconsistent versions of the facts on two previous trials. Since there was no evidence, other than plaintiff's testimony, which would support a judgment in his favor, the Supreme Court concluded that the verdict of the jury was the result of sympathy for plaintiff. Clearly, the reversal was based on the Supreme Court's

conclusion that the jury should not have believed plaintiff's testimony.

The approach to the problem of insufficient evidence is, then, necessarily subjective and the court's reaction may properly be described as visceral. Sometimes, as in *Gulf, C. & S.F. Ry. Co. v. Wilson,* 59 S.W. 589 (Tex.Civ.App.1900, no writ), the testimony relied on as supporting the verdict is, because of inconsistency with the facts and circumstances of the case, so inherently incredible that it must be disregarded. In such a case, it probably would be more accurate to say that there is "no evidence of probative force" supporting the verdict, since it makes little sense to say that reasonable minds would be justified in believing testimony which is inherently incredible. Nevertheless, the courts speak in terms of "insufficient evidence" in cases where, from a consideration of generally accepted scientific laws, matters of inherent probabilities or improbabilities, notorious facts of life and history, etc., the reviewing court "feels" that the verdict cannot be allowed to stand. *See* Garwood, *supra,* at 811.

■ In this case the testimony of Semlinger, Bank's loan officer who prepared the 1974 renewal note and letter of guarantee, was that it was agreed that the Systems note would be renewed in 1974 if Pletz would personally guarantee its payment, and that he inserted the words, "M. B. Pletz," in the instrument instead of "Pletz Building Systems, Inc.," by mistake. Pletz denied that he was ever asked to guarantee payment of the Systems note and also denied agreeing to be personally liable for payment of such note. He said that he did not notice what words had been inserted in the blank, but that he believed that the Bank desired that he guarantee payment of his personal obligations to Bank, and that is what he intended to do when he signed the guarantee. Semlinger testified that no useful purpose would be served by requiring Pletz to sign an instrument guaranteeing that he would be personally liable for payment of his personal obligations to Bank.

We believe that a consideration of all of the evidence requires that the jury findings be set aside as being so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

The explanation offered by Pletz strains credulity. The guarantee instrument concerns payment of obligations up to $30,-000.00, the exact amount of the Systems "renewal note" signed by Pletz at the time he signed the guarantee agreement. Pletz testified that he, in his personal capacity, had borrowed money from Bank several times prior to October, 1974, but that such personal loans had always been timely repaid, and that there had been no problems whatever concerning his personal indebtedness to Bank, although there may have been one or two occasions when his personal checking account had been overdrawn. His personal account was not in overdraft status in September, 1974, and there is no evidence that it had been in such status in the preceding months.

The agreement was signed by Pletz in the midst of negotiations concerning the financial responsibility of Systems, which was then in a state of default in its obligations to Bank. According to the testimony of Pletz, at that time the financial condition of Systems was not good and furnished no basis for the belief that Systems was in a position to repay a $30,000.00 note, particularly in view of its default in payment of prior obligations to Bank. It requires a significant degree of gullibility to believe that Bank, concerned with default by Systems, should require that Pletz guarantee payment of his personal obligations to Bank, rather than require assurance of payment of the obligation of a debtor with a history of default. Not even in the testimony of Pletz is there any indication that the 1974 discussions relating to the Systems' obligations reflected any concern on the part of Bank as to the continued faithful discharge by Pletz of his personal obligations. The Pletz testimony is completely at variance with the surrounding circumstances.

The judgment of the trial court is reversed and the cause is remanded for a new trial.