Jeffrey C. BROWN, Appellant,

v.

Wayne GONZALES, Appellee.

No. 16766.

Court of Appeals of Texas,
San Antonio.

Feb. 9, 1983.

Rehearing Denied May 11, 1983.

Pat Maloney, George LeGrand, San Antonio, for appellant.

Thomas H. Crofts, Ann Livingston, Groce, Locke & Hebdon, San Antonio, for appellee.

Before CADENA, C.J., and CANTU and TIJERINA, JJ.

## OPINION

CANTU, Justice.

This appeal originates as a result of an unfavorable judgment in a lawsuit growing out of a water-skiing accident in which appellant Jeffrey C. Brown, plaintiff below, was struck by a boat owned by his stepfather and driven by appellee Wayne Gonzales, defendant below and long time friend of appellant.

Appellant, appellee and other friends spent the afternoon of October 21, 1978 at appellant's stepfather's lake house on Lake Placid near Seguin, Texas. Both appellant and appellee were drinking during the day and taking turns piloting the boat while trailing skiers up and down Lake Placid.

Late that afternoon, appellant decided to go for one final round of skiing and asked appellee to operate the boat. After skiing for a while appellant had an uneventful fall. Appellee slowed the boat to an idle facing it down stream and away from the fallen skier. Appellee suddenly accelerated the boat, made a sharp u-turn, and ran over appellant who was floating in the water. Appellant sustained serious injuries to various parts of his body including the chest wall, internal organs, arms and both legs.

Appellant sued appellee alleging several negligent acts, including allegations that appellee:

1. ... operated the motorboat in a willful, reckless and negligent manner so as to endanger the life and limb of the plaintiff, in violation of Section 31.094 of the Texas Water Safety Act;

2. ... operated the motorboat at a greater speed than was reasonable and prudent under the circumstances, then existing, in violation of Section 31.095 of the Texas Water Safety Act;

3. ... operated the motorboat in a careless and imprudent manner in proximity of the plaintiff, thereby endangering the life and limb of the plaintiff, in violation of Section 31.103(b) of the Texas Water Safety Act;

4. ... failed to keep a proper lookout for the safety of the plaintiff in the area, and

5. ... failed to properly turn the boat either to the right or to the left.

Appellant also sued Sea Ray Boats, Inc., Don's Marine, Inc., and Mercury Marine, parties connected with either the boat's manufacture or its sale. Liability against these parties was predicated upon alleged defective design.

Appellee answered denying he was negligent and alleged that the appellant's negligence, a defective boat design, or both, were causes of the accident. Appellee also cross-claimed against Sea Ray Boats, Don's Marine, Inc. and Mercury Marine alleging defective design and seeking indemnity or contribution.

Before trial appellant entered into settlement agreements with Sea Ray Boats, Don's Marine, Inc. and Mercury Marine. Appellant amended his petition to allege only the negligence of appellee as the cause of the accident. In response, appellee amended his cross-claim to seek contribution or indemnity in the form of a reduced judgment by reason of the alleged defective design. Mercury Marine was non suited as a party while Sea Ray Boats and Don's Marine, Inc. remained in the lawsuit as cross-defendants.

In response to special issue number 1 the jury answered that appellee was not negligent in the speed with which he operated the boat, not negligent in keeping a lookout, not negligent in failing to pull back the throttle and not negligent in failing to turn the boat and avoid hitting appellant.

In response to special issue number 2 the jury found that the boat in question was not defectively designed.

In response to special issues numbers 4 through 6 the jury found from a preponder-

ance of the evidence that appellant failed to properly instruct appellee in the operation of the boat, and that such failure was negligence which was a proximate cause of the accident.

In response to the damage issues, the jury found that appellant had incurred past and future medical expenses but no other damages. Based upon these findings, the trial court rendered a take nothing judgment against appellant.

By his first point of error appellant contends the trial court erred in overruling his motion for new trial because the evidence was sufficient to show that appellee was negligent as a matter of law, such negligence being the proximate cause of appellant's injuries. By his second point of error appellant contends there is no evidence to support the jury finding as to the lack of negligence on the part of appellee. By his third point of error appellant contends the answers of the jury to special issue number 1, finding no negligent conduct on the part of appellee, are so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and unjust.

■ In reviewing appellant's point of error three, a factual sufficiency challenge, we are guided by the principle that all of the evidence in the case must be considered and weighed. Weighing all the evidence, we may not set aside the jury verdict unless we conclude that it is so against the great weight and overwhelming preponderance of the evidence as to be manifestly wrong and unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

A review of appellant's point of error two, a "no evidence" point, requires us to view the evidence in the light most favorable to the verdict. Thus we must discard all adverse evidence and consider only the evidence which supports the verdict of the jury. *Robertson v. Robertson,* 159 Tex. 567, 323 S.W.2d 938 (1959).

According to appellant, we are to examine his first point of error applying the test enunciated in *Hoey v. Solt,* 236 S.W.2d 244 (Tex.Civ.App.—San Antonio 1951, no writ) an automobile collision case. The test adverted to therein is as follows: "If reasonable minds can differ as to the inferences and conclusions to be drawn from the undisputed evidence, the case is one for the jury. If reasonable minds cannot differ, then an issue of law only is presented." The foregoing test recognizes that negligent conduct may be excused by some extenuating circumstance or condition and if the evidence raises the issue of excuse even though accompanied by undisputed evidence, the question is one of fact unless from all the evidence reasonable minds can draw but one inference or conclusion.

Although appellant's point of error one is presented in an unconventional manner we shall pass on its merits in light of the argument and authorities offered in support. *O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d 112 (Tex.1976) recalled 551 S.W.2d 32. A close consideration of the contention shows that appellant's point of error is tantamount to a "no evidence" challenge. This is readily apparent from appellant's argument in support of the proposition seeking to convince us that there were no extenuating circumstances which excused the alleged negligence of appellee. We shall consider only that evidence which buttresses the jury finding that appellee was not negligent. *In re King's Estate, supra.*

■ In arriving at its findings, the jury is entitled to evaluate the facts proved and the inferences to be drawn, so long as the inferences are reasonable. It is within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony. The jury must also resolve conflicts and inconsistencies in the testimony of any one witness, as well as in the testimony of different witnesses. Jurors may believe one witness and disbelieve another, or believe part of the testimony of a witness and disbelieve any other part. *Lockley v. Page,* 142 Tex. 594, 180 S.W.2d 616 (1944); *Clodfelter v. Martin,* 562 S.W.2d 491 (Tex.Civ.App.—Corpus Christi 1977, no writ).

Appellant's presentation of the facts relating to the accident consisted of testimony of six individuals who were present when the accident occurred. Only appellant and appellee testified in person. The other four witnesses' testimony was presented by having their depositions read into evidence. The deposition witnesses were Karen Stieren, a passenger in the boat, H.D. Steubing, Eugene Hohon and Albert Hurst, three individuals who witnessed the incident from the shore. Each witness was asked to describe the accident. Neither appellant nor appellee was able to shed much light on the events leading up to the accident. In addition to appellee's live testimony, portions of a recorded telephone conversation made shortly after the accident were introduced by appellant. Appellee's deposition was also read to the jury as were answers to interrogatories propounded to appellee.

Testifying as an adverse witness at the trial, appellee admitted that after appellant fell he did not know if he lost sight of appellant. He could not remember how many times he had circled appellant, or whether appellant had hold of the ski rope as the boat was turning. Appellee remembers accelerating the boat to pull appellant out of the water but did not know the boat's direction as it began to accelerate. Nor could appellee estimate the speed of the boat at the time of the accident, although he thought he was going a little past idle. Appellee did not know if appellant ever got up on his skis. Basically, appellee stated he did not know what happened.

When viewed in total, appellee's testimony is admittedly conflicting. During live testimony appellee claimed his view was obstructed because of the way the boat was functioning. His deposition and answers to interrogatories likewise claimed an obstruction. Appellee acknowledged that his earlier telephone statement was in direct conflict with his later position regarding obstruction. The prior statement acknowledged that he had no trouble with the boat in turning around. However, other live testimony ascribed steering problems to the boat. Appellee described the boat as having a hard pull to the left and as being "hard to manage."

Appellant, testifying in his own behalf, corroborated appellee's testimony that the boat pulled hard to the left and that the boat rose unnecessarily high out of the water. Appellant admitted that he had not instructed appellee on the use of the power trim button "since there was no need to know about it." Appellant did not remember telling appellee about the problems with the boat steering although he assumed appellee had heard about the problems.

Karen Stieren, a passenger in the boat described appellee's handling of the boat as responsible but felt that appellee was operating at too fast a speed when circling appellant. She also felt appellee had come much too close to appellant the second time around. Her remaining testimony was similar to that of on shore witnesses Hohon and Hurst.

At the time of the accident Hohon was sitting on his dock fishing with his friend Steubing. Hurst was sitting on his patio located next door to Hohon's residence. Both Hohon and Hurst testified that appellee circled the boat around appellant to give him the tow rope, that appellant retrieved the rope and that they heard appellant say "Go" or "Start," apparently indicating that he was ready to resume skiing. According to the witnesses the boat accelerated, but immediately began a sharp u-turn, at first proceeding toward the shore almost hitting the dock and then angling towards the middle of the lake directly towards appellant.

Hohon described how the acceleration of the boat lifted the bow of the boat out of the water so that fully 75% of the boat was above the water. Hohon did not believe appellee had control of the boat. Hurst agreed that the bow of the boat rose noticeably when appellee accelerated the boat immediately prior to running over appellant. After the accident Hurst drove the boat back to appellant's stepfather's lake house and encountered no steering problems. He did notice that the boat appeared to have more power than he expected and that the

bow rose high obstructing his view except when operated at extremely low speed. Hurst expressed the opinion that the boat was being driven a little recklessly by appellee.

Steubing's testimony through deposition was similar to that of Hohon and Hurst and did not particularly shed any further light on the circumstances leading up to the accident.

The testimony of the expert witness Robert Hobbs, a marine designer, the rough equivalent of a small boats architect, was offered by appellant through his prior deposition and through live testimony. Hobbs was hired by appellant to test the boat in question at a time when Sea Ray Boats, Inc., Don's Marine, Inc. and Mercury Marine were still defendants and prior to a settlement subsequently entered into by the parties with appellant. His earlier deposition supported the conclusions that the boat was difficult to control while turning, that it was unreasonably dangerous and that it was the producing cause of the accident. At the time of the trial Hobbs' opinion had changed because, as he explained, additional information not previously available to him had caused him to reevaluate his position. His subsequent conclusion exonerated the boat's design from being the producing cause of the accident, while at the same time reiterating his opinion that the boat's design was defective. Hobbs agreed that the dangerous features of the boat impaired the driver's ability to see.

Hobbs' earlier pronouncement that appellee was confronted with a sudden unexpected situation for which he did not have ample time to react was replaced by a subsequent conclusion that the unreasonably defective design had nothing to do with the accident. The pilot having control of the boat, Hobb's testified, did not properly exercise his duty as an operator of a marine vehicle. Hobbs' change in position occurred near the time of the settlements. Throughout the trial numerous references to the settlements were made in the presence of the jury by all the parties resulting in evidence being received regarding the circumstances of the settlement.

In order to find liability on the part of appellee the jury was required to find that appellee was negligent with respect to four alleged acts:

(1) the speed with which he operated the boat,

(2) in keeping a lookout,

(3) in his failure, if any, to pull back the throttle, or

(4) his failure, if any, to turn the boat to avoid hitting appellant.

We find there is evidence from which the jury could have arrived at its negative responses to special issue number one. Appellant's third point of error requires us now to examine those findings and determine if they are so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust.

### The Jury's Refusal to Find Negligence With Respect to Speed

While there is some evidence that appellee may have been operating the boat at a speed deemed reckless by at least one witness, we must confine our consideration of the evidence on speed to the events before the accident and after appellant fell. This is because any relevant inquiry should focus upon the speed of the boat at the time appellee accelerated and made the u-turn immediately prior to the tragic event.

Appellant testified as to the correct procedures for pulling a skier up on his skis. According to appellant, it was necessary to fully open the throttle once the skier gave the command to go. Because of his large size, appellant testified, a pulling boat would require more power to accomplish the lift. Appellant preferred an even higher speed and advised appellee to drive at a high speed. Appellant's own witness, Hobbs, stated that the boat's full power was required to bring the skier to his feet and that sudden high acceleration in these circumstances was reasonable.

The jury was justified in concluding that appellee's accelerating at full throttle to pull appellant up on his skis in response

to appellant's command to do so was not negligent conduct. It was within their prerogative to reconcile appellee's testimony about not knowing how fast the boat was going when he struck appellant or that he thought he was going slow with the testimony of the other witnesses placing his speed at full throttle. The jury's refusal to find appellee negligent with respect to speed is not against the weight and preponderance of the evidence.

### The Jury's Refusal to Find Improper Lookout

Appellee testified that when towing a skier he was required to know the skier's position at all times. He further acknowledged that it was poor practice to approach a skier with the bow of the boat in a position where he could not see the skier, and that to do so would be dangerous in that he might run over the skier. While appellee did not recall if he circled appellant while appellant was in the water, he did recall seeing him to the left side of the boat. The witnesses' description of the boat's path immediately before the accident placed appellant on the boat's left side as it circled prior to making the u-turn. This would corroborate appellee's claim that he could see appellant irrespective of the bow's tendency to rise. Virtually all the testimony confirmed the tendency of the boat to rise and its attendant impairment of vision prior to reaching the planing position. Appellee claimed that the cause of the accident was the boat's tendency to block his vision. His further statement that he could see appellant when he was on the boat's left side is not inconsistent with the position that the bow obstructed his view directly in front. Appellant's expert witness Hobbs corroborated appellee's testimony regarding the boat's peculiarities which could cause obstruction of view due to defective design.

In addition to the claimed difficulties with the boat, appellee recognized his duty to give full attention to the front as well as to the rear of the boat so as to watch the forward direction of the boat as well as the skier behind. Appellee also recognized his duty to watch out for such things as the bank of the lake and for obstacles in the water. He stated that he "had his hands full" in doing all of these things.

Proper lookout necessarily encompassed more than appellee's continuous lookout for appellant or in a single direction. *Roth v. Brillhart,* 512 S.W.2d 57 (Tex.Civ.App.—Amarillo 1974, no writ). In determining whether appellee's conduct or omission amounted to improper lookout constituting negligence, appellee's conduct or omission must be evaluated in the context of all the circumstances attendant with the activity in which the parties were engaged. Proper lookout must be equated to such a lookout as a person of ordinary care would have kept under the same or similar circumstances. In order to hold appellee's conduct as falling below this standard there must be a showing that appellee did something or failed to do an act contrary to the duties imposed upon him at the very moment he undertook to accelerate the boat at full throttle.

There is no evidence that appellee did not keep a lookout for appellant as he waited to be pulled up. There is appellee's testimony that he saw appellant to his left and that he does not know what happened after that.

[6] The duty to look at the forward direction of the boat while applying full throttle when the boat has steering problems and rises quickly out of the water on acceleration establishes a necessary diversion which would excuse appellee (or a person of ordinary care under the same or similar circumstances) from maintaining a continuous lookout for appellant. The jury was presented with a factual choice. Under the evidence presented we do not find the jury's refusal to find negligence in keeping a lookout to be against the weight and preponderance of the evidence.

### The Jury's Refusal to Find Negligence With Respect to Pulling Back on the Throttle
### and
### The Jury's Refusal to Find Negligence With Respect to Failure to Turn the Boat to Avoid Hitting Appellant

Appellee testified that the incident occurred so fast that he did not know what

had happened. There is evidence in the record that the sudden turn executed by appellee was unexpected and that the sudden turn was due to difficulties with the boat. Appellant's expert witness Hobbs stated in his deposition that given certain unsafe features of the boat, appellee had several alternative courses of action but did not have time to react before the boat struck appellant. The distance between the place where the boat accelerated and where it struck appellant was not more than 75 feet. The time between acceleration and the accident was only a few seconds.

Although Hobbs retracted much of his deposition testimony by claiming that his earlier conclusions were based upon incomplete information we cannot say that the jury was compelled to believe his latter version.

■ In determining what an ordinarily prudent man would do under given circumstances, the time available for realization and reaction is of extreme importance. *Caughman v. Glaze,* 412 S.W.2d 357 (Tex. Civ.App.—San Antonio 1967, writ ref'd n.r. e.).

■ In view of the evidence presented to the jury we cannot say that their refusal to find negligence in appellee's failure to pull back on the throttle or to turn the boat in order to avoid hitting appellant was against the weight and preponderance of the evidence.

Much of the testimony conflicted. The jury heard different versions of appellee's explanation of the events. Much of the testimony sponsored by appellant, on the other hand, was likewise in conflict with earlier versions. The jury was free to reconcile any inconsistency between the witnesses' testimonies, or select any one witness' version of the incident. It was the jury's prerogative to resolve inconsistencies in the testimony of any one witness. *Lambert v. Lambert,* 545 S.W.2d 542 (Tex.Civ. App.—Houston [1st Dist.] 1976, no writ); *Smith v. Bifano,* 330 S.W.2d 473 (Tex.Civ. App.—Waco 1959, writ ref'd n.r.e.).

Much of the testimony relied upon by appellant is impeaching testimony but in the final analysis whether testimony in fact impeaches is a matter for the jury. And while we might be inclined to disagree with the jury findings, we are not at liberty to substitute our finding for the jury's where there is probative evidence in the record to support their findings. *Martin v. Jenkins, supra; Pickens v. Baker,* 588 S.W.2d 406 (Tex.Civ.App.—Amarillo 1979, no writ); *Riley v. Crossley,* 383 S.W.2d 427 (Tex.Civ. App.—Houston 1964, no writ). Unless the probative evidence supporting the findings are against the great weight and preponderance of the evidence as to be manifestly unjust they will stand on appeal. *John Roberts, Inc. v. Bookstall, Inc.,* 538 S.W.2d 473 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.)

We, therefore, find the answers of the jury to special issue number 1 finding no negligent conduct on the part of appellee to be supported by sufficient probative evidence and that the answers are not contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and unjust. Appellant's points of error 2 and 3 are, therefore, overruled.

Our examination of the record does not support appellant's contention that the evidence was undisputed or that if it were undisputed that reasonable minds would not have differed. Much of the evidence became disputed as a result of conflicts created by appellant's own evidence. In any event, appellant's contention that the evidence as a matter of law requires a conclusion contrary to the jury's finding is tantamount to a "no evidence" challenge. *San Antonio Bank & Trust v. Pletz,* 588 S.W.2d 797 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). Applying the test in *Hoey v. Solt, supra* we reject appellant's contention that the evidence established as a matter of law that the negligence of appellee proximately caused the injuries sustained by appellant. Appellant's first point of error is overruled. The conflicts in testimony raised genuine issues of fact upon which reasonable minds could differ which re-

quired the submission of issues to the jury. *Staha v. Mitchell*, 294 S.W.2d 906 (Tex.Civ. App.—Austin 1956, no writ). Their findings are supported by probative evidence.

By his fourth, fifth, sixth and eighth points of error appellant challenges the court's right to submit special issues and the legal and factual sufficiency of the evidence to support the jury's answers to special issues numbers four, five and six.

Special issues four through six were submitted to the jury conditionally.

Issue number 4 inquired:

Do you find from a preponderance of the evidence that Jeffrey C. Brown failed to properly instruct Wayne Gonzales in the operation of the boat?

The jury answered, "We do."

Issue number 5 inquired:

Do you find from a preponderance of the evidence that such failure was negligence?

The jury answered, "We do."

Issue number 6 inquired:

Do you find from a preponderance of the evidence that such negligence was a proximate cause of the accident in question?

The jury answered, "We do."

Appellant contends that the record, when viewed in the light most favorable to the jury findings, does not disclose any probative evidence that appellant failed to properly instruct appellee in the operation of the boat, that any such failure was negligence, or that this negligence was the proximate cause of the accident.

We believe there was some evidence to support the jury findings. Appellee admitted that appellant had given him certain instructions. He had been told not to push the throttle out "too far," not to "jerk the skier out," and to watch to see if the skier fell so that the boat could then be stopped. Appellant agreed that he had given appellee some instructions.

Appellant was familiar with the boat's tendency to rise unnecessarily high out of the water, to not plane out very well and to pull hard to the left. Nevertheless appellant did not remember ever telling appellee about these problems. Additionally, appellant never informed appellee about the boat's power trim, which was designed to keep the boat level as it accelerated. The jury might well have reasonably found that appellant was negligent in not telling appellee about these problems.

In passing upon appellant's "no evidence" point we must be governed by the well established rule that if an issue of fact is raised by the evidence, it must go to the jury even though a verdict based on such evidence would have to be set aside as not supported by sufficient evidence. *Wallace v. Southern Cotton-Oil Co.*, 91 Tex. 18, 40 S.W. 399 (1897); *Great Atlantic & Pacific Tea Co. v. Giles*, 354 S.W.2d 410 (Tex.Civ. App.—Dallas 1962, writ ref'd n.r.e.).

Although we overrule appellant's "no evidence" contention we find it unnecessary to decide his insufficient evidence challenge in view of our holding that the jury's refusal to find appellee negligent is not contrary to the great weight and preponderance of the evidence. *Caughman v. Glaze, supra.* The jury findings complained in appellant's points of error four, five and six all relate to defensive issues and not to appellee's alleged negligence. A finding that appellee was not negligent rendered appellant's negligence immaterial. Even if we should conclude that there was no evidence to support such findings, there would be no basis for the rendition of a judgment other than that entered by the court below. *Caughman v. Glaze, supra.* We have examined the court's charge as a whole to determine whether the submission of unnecessary jury issues could have resulted in the rendition of an improper judgment. We are unable to see how an improper judgment might have resulted and appellant has failed to demonstrate otherwise. Appellant's fourth, fifth, sixth and eighth points of error are overruled.

Appellant next complains by his point of error seven that the jury findings as to damages in response to special issue number 8 were clearly inadequate. The evidence is overwhelming and totally uncontradicted

that appellant sustained physical pain and disfigurement, physical impairment, and loss of earning capacity in the future. The jury, nonetheless, awarded zero damages.

■ In view of the jury's answer vindicating appellee of negligence and thus liability, the damage issue becomes immaterial. *Williams v. Berry,* 389 S.W.2d 89 (Tex. Civ.App.—Dallas 1965, writ ref'd n.r.e.); *Southern Pine Lumber Co. v. Andrade,* 132 Tex. 372, 124 S.W.2d 334 (1939); *Garza v. San Antonio Transit Co.,* 180 S.W.2d 1006 (Tex.Civ.App.—San Antonio 1944, writ ref'd w.o.m.).

Appellant next complains of trial court error in the exclusion from evidence of the settlement agreements between appellant, Sea Ray Boats, Inc., Don's Marine, Inc., and Mercury Marine. As stated earlier, along with his negligence claim against appellee, appellant also brought a defective design claim against Sea Ray Boats, Inc., Don's Marine, Inc. and Mercury Marine, all connected either with the manufacture or sale of the boat. Before trial, appellant entered into "Mary Carter"[1] agreements with each of these defendants. Under the agreements, each defendant agreed to pay a specified amount to appellant in return for a covenant not to sue. Each agreement also included a provision whereby if appellant recovered a judgment against any nonsettling defendant, the settling defendant could recover the amount paid for his release. Pursuant to these agreements appellant dismissed the settling defendants. Appellee in turn nonsuited Mercury Marine but proceeded against Don's Marine, Inc. and Sea Ray Boats, Inc. as cross-defendants in order to protect his right to contribution or indemnity.

■ During trial, appellee was permitted to examine witnesses concerning the settlements for the purpose of informing the jury that the interests of Don's Marine, Inc. and Sea Ray Boats, Inc. in the outcome of the suit were aligned with appellant's interests. Both sides had made repeated references to the settlements before the

jury with only the terms being undisclosed. Appellant does not argue that evidence of Mary Carter agreements is not admissible before the jury. On the contrary, appellant recognizes an exception permitting such evidence. *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex.1977). His argument addresses the trial court's failure to permit the entire instruments to go before the jury. He contends that appellee was permitted to edit the agreements and offer only those portions which were favorable to him. Appellee invokes the general rule holding that if one party introduces part of a writing into evidence, the other party may introduce as much of the remainder of such evidence as is necessary or proper to explain the part previously admitted. 23 Tex.Jur.2d, *Evidence,* § 141, p. 207. We have no quarrel with the general rule relied upon by appellant. We do, however, question whether appellant's proferred exhibit met the "necessary or proper to explain" test in the rule. *Cf. American Bankers Life Insurance Co. v. Barlow,* 127 S.W.2d 1026 (Tex.Civ.App.—Waco 1939, error dism'd, judgment correct).

Both parties recognize, and we agree, that the dispute is controlled by the holding in *General Motors Corp. v. Simmons, supra.* It is appellant's interpretation of what the Supreme Court meant by the term "the real nature of settlement agreement" that creates a problem. Appellant sought to admit self-serving recitals contained in the agreements. The agreements were replete with recitations proclaiming that the settling defendants were innocent of any wrongdoing or negligence. There were also recitations that the settling parties agreed that appellant's damages exceeded two million dollars. We agree with the trial court that these self-serving statements were not admissible or necessary to explain the real nature of the settlement agreement.

*Simmons* permits evidence of the fact of and the nature of the settlement for impeachment purposes because a settling defendant has a financial interest in a judgment for the plaintiff. Therefore, it is rea-

---

1. *Booth v. Mary Carter Paint Co.,* 202 So.2d 8 (Fla.App.1967).

soned, the jury should be permitted to know of the settling defendant's potential bias in favor of a recovery for the plaintiff.

Similar self-serving recitals have led to a declaration that Mary Carter type agreements are void. *See Lum v. Stinnett,* 87 Nev. 402, 488 P.2d 347 (Nev.1971). Other problems have also been recognized stemming from these types of settlement agreements. *See* Annot., *Validity and Effect of Agreement with One CoTortfeasor Setting His Maximum Liability and Providing for Reduction or Extinguishment Thereof Relative to Recovery Against Nonagreeing Co-Tortfeasor,* 65 A.L.R.3d 602 (1975).

We note that it was appellant's stated purpose to attempt to introduce the agreements in their entirety. Although the trial court offered to allow the unobjectionable portions, appellant insisted on the all or nothing proffer. In the absence of an offer to separate the admissible from the inadmissible portions of the agreements appellant may not complain if the trial court excludes the entire instrument from evidence. *Texas Reciprocal Insurance Association v. Stadler,* 140 Tex. 96, 166 S.W.2d 121 (1943); 1 R. RAY, *Texas Law of Evidence,* § 21, p. 26 (Texas Practice 1980).

Much of the contents of the excluded agreements was admissible "to explain the nature of the agreements" and was in fact received in evidence before the jury. Appellant was permitted to read portions of one settlement into evidence in order to explain the true nature of the agreement. He was further permitted to state without objection that a condition of the settlement was that his claim was worth at least two million dollars. There were very few portions of the agreements that were not elicited before the jury.

The trial court did not err in excluding the actual settlement documents as evidence. The portions not permitted before the jury were hearsay, prejudicial, and purported to resolve the issues of liability and damages, clearly within the province of the jury. *Danaho Refining Co. v. Pan American Petroleum Corp.,* 383 S.W.2d 941 (Tex. Civ.App.—Waco 1964, writ ref'd n.r.e.).

Appellant urges us to follow the recent holding in *McAllen Kentucky Fried Chicken No. 1 v. Leal,* 627 S.W.2d 480 (Tex.Civ.App. —Corpus Christi 1981, writ ref'd n.r.e.) in support of the admissibility of the entire instrument. The opinion written by Justice Utter does not disclose the language contained in the settlement agreement in that case. It does reveal that the non settling defendant/appellant made first mention of the settlement agreement, offering only a portion of the agreement during cross-examination of one of the settling defendant/cross-defendant/appellees. Thereafter appellee offered and the court admitted the remaining portions of the settlement agreement *after certain deletions were made.*

Although the holding speaks in terms of the entire agreement being admissible to explain the overall agreement and prevent the jury from being misled by selected portions of the agreement, it is apparent that the opinion means the entire settlement agreement as altered by deletions. Should we be mistaken about the court's holding, we decline to follow the case insofar as it suggests that prejudicial and irrelevant matters become admissible irrespective of their lack of probative value.

In any event, we are faced in the instant case with a situation where appellant first elicited the fact of a settlement agreement during voir dire followed by further mention of the settlement by attorneys for the settling defendants over repeated objection by appellee. Thus the instant case is distinguishable from *McAllen* in that the door was opened by appellant, not the appellee.

We are not inclined to hold that appellant may prepare and enter into an agreed settlement containing self-serving recitations, open the door over objection to mention of the settlement and then place the non-settling defendant to choose between "suffering in silence" the damaging conduct of a settling defendant or to explain that conduct to the jury by offering the agreement into evidence "with its statements calculated to frame the offering party in the worst possible light." *Burkett v. Crulo Trucking Co.,* 171 Ind.App. 166, 355 N.E.2d 253, 260—

61 (Ind.App.1976). Appellant's ninth point of error is overruled.

▮ In his tenth and final point of error appellant claims error resulted from a reference to payment of medical bills by counsel for appellee during final jury arguments. The contention is that such mention injected insurance into the minds of the jury. The error is not pointed out to us in the record.

We have searched the record and fail to find a transcription of the jury arguments or some attempt to preserve error, if any, for review.

A statement in appellant's brief of the alleged content of the argument is not sufficient to enable appellate review. *Hanover Insurance Co. v. Hoch,* 469 S.W.2d 717 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). Appellant's tenth point of error is overruled.

In view of our disposition we do not reach appellee's cross-point seeking to preserve his cross-action on remand in the event of an unfavorable ruling.

The judgment of the trial court is affirmed.

### On Appellant's Motion for Rehearing
CADENA, Chief Justice.

Appellant's motion for rehearing is overruled. Ordinarily, since the motion for rehearing presents nothing which was not forcefully argued in appellant's brief, it would be overruled without written opinion. However, since the dissenting opinion by Justice Tijerina, at the very least, suggests that Justice Cantu, the author of the original opinion, applied the wrong test in disposing of the case, an answer to such dissent seems to be in order.

Our dissenting brother "would reverse and remand this cause for a redetermination of damages". Such a conclusion necessarily rests on a determination that appellee's negligence was conclusively established or established as a matter of law so that the question of appellee's negligence should not have been submitted to the jury. The propriety of severing the issues concerning appellee's liability from the damage issues and remanding only for a determination of damages will be the subject of later comment in this opinion.

Since Justice Cantu's opinion contains a fair and detailed summary of the evidence in this case, there is no occasion to add to that summary in this opinion.

Since the burden of proving that appellee was negligent was on appellant, his complaints based on the effect of the evidence must be that the refusal of the jury to find that appellee was negligent cannot stand because such negligence was established as a matter of law or, alternatively, because such refusal was so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust and unfair.

Where an appealing plaintiff complains of the failure of the jury to find defendant negligent and contends that the evidence established negligence as a matter of law, the reviewing court cannot always dispose of the contention by pointing to evidence tending to show that defendant was not negligent. Of course, if there is evidence of probative force that defendant was free of negligence, the inquiry by the appellate court need proceed no farther and the point will be overruled. But the fact that there is no such evidence does not result in a determination that the defendant's contention must be upheld. A plaintiff cannot contend that a finding of negligence is compelled because defendant failed to produce evidence that he was not negligent. Such a rule would clearly amount to shifting the burden of proof from plaintiff to defendant concerning an issue which plaintiff must prove in order to recover. If there is no evidence that defendant exercised due care, the appellate court must then turn to a consideration of all of the evidence in order to determine whether the evidence is such that the only tenable conclusion would be that the defendant was guilty of negligence. While this process requires that the court consider evidence which would be destructive of the verdict, it does not mean that only the evidence supporting a finding of negligence will be considered. Other

testimony, such as evidence which would justify a disregard by the jury of the evidence tending to show that defendant was negligent, must be considered. For example, evidence impeaching the witnesses on whose testimony plaintiff relies would certainly prevent the conclusion that negligence had been established as a matter of law.

Justice Cantu's opinion fairly summarizes all of the evidence, including inconsistencies in the testimony of the witnesses and circumstances tending to excuse defendant's conduct, and correctly concludes that negligence was not established as a matter of law.

Attention may properly be called to the incorrect conclusion stated in the dissenting opinion that a distinction may be drawn, based on *Hoey v. Solt,* 236 S.W.2d 244 (Tex. Civ.App.—San Antonio 1951, no writ), "between negligence as a matter of law and a 'no evidence' point." *Hoey,* in considering a contention that evidence established negligence as a matter of law, did adhere to the rule that if the evidence is such that the only conclusion which can be drawn by reasonable minds is that defendant was negligent, the fact of defendant's negligence is conclusively established. But the conclusion that the "reasonable minds" test is applicable only when the reviewing court is considering a contention that negligence was established as a matter of law is completely untenable. At least since 1896 the Supreme Court has applied that test in cases where the contention was that there was no evidence to support a finding of negligence. *Choate v. San Antonio & A.P. Ry.,* 90 Tex. 82, 37 S.W. 319 (1896). In *Woods v. Townsend,* 144 Tex. 594, 192 S.W.2d 884, 886 (1946), our Supreme Court clearly stated, in a case where appellant contended that there was "no evidence" to support a jury finding that a fact existed, that the test was whether reasonable minds could reach the conclusion reached by the finder of fact. The distinction suggested by the dissenting opinion is necessarily based on the assumption that *Hoey v. Solt, supra,* a decision by a Court of Civil Appeals with no writ history, overruled prior Su-

preme Court decisions which were not mentioned in the *Hoey* opinion. A "distinction" based on such a patently incorrect assumption cannot be seriously considered.

*Lovell v. Sandford,* 378 S.W.2d 399 (Tex. Civ.App.—Austin 1964), *rev'd.,* 386 S.W.2d 755 (Tex.1965), like *Hoey,* contains no language suggesting the distinction on which the dissenting opinion appears to be based. The Austin Court of Civil Appeals, it is true, held that the evidence established negligence as a matter of law and, as did *Hoey,* applied the "reasonable minds" test, but it did not even hint that it was somehow overruling prior Supreme Court decisions. The Supreme Court disagreed, holding that negligence had not been established as a matter of law.

The test which is applied in the dissenting opinion is not easily discovered. The dissenter tells us that he has reviewed the evidence "in the light most favorable to the appellee." The dissenter's only reference to the evidence is found in the fifth paragraph of the dissenting opinion. This review of the evidence "in the light most favorable to appellee" refers only to evidence favorable to appellant. The basis for the statement that the review of the evidence in the light most favorable to appellee justifies the conclusion that appellant established the existence of negligence as a matter of law is, perhaps, found in the statement in the dissenting opinion that the conclusion follows because "there is no evidence of extenuating circumstances mitigating the presumption of negligence . . . ." A review of the evidence which begins with a "presumption of negligence" and casts on the appellee the burden of producing evidence "mitigating the presumption" of negligence falls somewhat short of meriting the classification of a review of the evidence "in the light most favorable to the appellee."

The dissenting opinion then, appears to be based on a distinction which does not exist, buttressed by a misallocation of the burden of proof. The fact that the shifting of the burden of proof is based on a presumption which, like the purported distinc-

tion does not exist, does not make the dissenting opinion more acceptable.

In any event, the conclusion that the cause should be remanded for a retrial restricted to the issue of damages is indefensible. The jury found that appellant was guilty of contributory negligence. Because the comparative negligence issue was conditionally submitted, it was not answered by the jury, since the jury was instructed to answer that issue only if both appellant and appellee were found guilty of negligence. Under these circumstances, even if it be assumed that appellee's negligence was conclusively established there is no basis for the dissenter's conclusion that all of the damages flowed solely from appellee's negligence.

It is true that Rule 434, Tex.R.Civ.P. permits this Court, where the record reflects reversible error which affects only a clearly separable part of the judgment, to reverse and order a new trial only as to the portion affected by the error. But the rule goes on to provide, in simple and unambiguous language, that a separate trial "on unliquidated damages alone" cannot be ordered if the liability issues are contested.

The suggestion that the retrial be limited to the issue of damages must be summarily rejected, even if the contention that appellee's negligence was completely established is accepted.

The dissenting opinion does contain the statement that the evidence "is factually insufficient to support the jury findings." As already pointed out, an answer adverse to the party who has the burden of proof on an issue requires no support in the evidence. Assuming that the statement concerning the factual sufficiency of the evidence was intended as a statement that the jury's failure to find that appellee was negligent is contrary to the overwhelming weight and preponderance of the evidence, and further assuming that such a conclusion finds support in the record, it would not support a judgment based on the theory that liability has been conclusively established and that all that remains to be determined is the amount of damages. *Banks v. Collins,* 152 Tex. 265, 257 S.W.2d 97 (1953).

TIJERINA, Justice, dissenting.

I respectfully dissent. Upon reconsidering the evidence in this case, I find it extremely difficult to accept that any failure on the part of appellant contributed to the accident or that appellee was not negligent. The jury finding to that effect is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust and as such would cause manifest injustice. The majority comments that the evidence is uncontradicted that appellant sustained physical pain and disfigurement, physical impairment, and loss of earning capacity in the future.

Appellant's Motion for Rehearing contends that appellee was negligent as a matter of law. The suggested standard of review is premised on Judge Norvell's authoritative opinion in *Hoey v. Solt,* 236 S.W.2d 244 (Tex.Civ.App.—San Antonio 1951, no writ) which pronounces the legal test for negligence as a matter of law as follows:

If reasonable minds can differ as to the inferences and conclusions to be drawn from the undisputed evidence, then the case is one for the jury. If reasonable minds can not differ, then an issue of law only is presented.

It cannot be gainsaid that one who fails to stop his automobile in response to a traffic signal but propels the same into the rear end of an automobile which has stopped in obedience to the signal, is guilty of negligence proximately causing injury or damage unless such conduct is excused by some extenuating circumstance or condition.

My distinction between negligence as a matter of law and a "no evidence" point is predicated on *Hoey v. Solt, supra.* As stated in *Lovell v. Stanford,* 378 S.W.2d 399, 406 (Tex.Civ.App.—Austin 1964), *rev'd,* 386 S.W.2d 755 (Tex.1965), "[t]he circumstances surrounding an accident may be so strong that, unexplained, the inference of negligence and proximate cause to be drawn from them is one about which reasonable

minds could not differ and, hence, is one of law."

Given a situation where reasonable minds may differ as to the truth, it is immaterial that the evidence may preponderate in favor of one party to such an extent that a verdict adverse to him would have to be set aside as against the weight of the evidence: It is the duty of the jury initially to determine the preponderance of the evidence, subject to the power of the court to grant a new trial should the juror make a finding against the evidence. 3 R. McDONALD, TEXAS CIVIL PRACTICE, § 11.28.2 at 238–239 (1970); see also Highway Insurance Underwriters v. Roberts, 224 S.W.2d 903 (Tex.Civ.App.—Fort Worth 1949, writ ref'd n.r.e.).

There is evidence in this record which shows that appellee had previously driven the boat on a number of times, had been a passenger when skiers were towed, and had, before the occasion in question, pulled appellant. The evidence is undisputed that appellant was in the water behind the boat and without any justification or excuse of record appellee accelerated the motor boat to full speed with the steering wheel cocked hard left and in appellant's due direction. The only reasonable inference that can be drawn from the evidence is that appellee's failure to properly maintain control of the boat was the proximate cause of the accident. See Priest v. Myers, 598 S.W.2d 359 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). An appellate court can review jury findings to determine if there is probative evidence to support such findings and to review the correctness of the legal conclusions from those findings. See Kentucky Central Life Insurance Co. v. Fannin, 575 S.W.2d 76, 80 (Tex.Civ.App.—Amarillo 1978, no writ), holding that "an assertion of no evidence has validity only if there is absence of any evidence of probative force, either direct or circumstantial, to raise an issue submitted...."

The complexities in determining the proper standard of review, for the rare and unusual case, where the trier of fact totally disregards the clear evidence, the extreme damages, dictates the need for judicial interpretation from the ultimate reviewer. "If the prevailing rule is to be abrogated, it is the exclusive prerogative of our Supreme Court...." Metal Structures Corp. v. Plains Textiles, Inc., 470 S.W.2d 93 (Tex. Civ.App.—Amarillo 1971, writ ref'd n.r.e.).

The interests of justice and fairness require that this cause be reversed and remanded. See Hines v. Nelson, 547 S.W.2d 378 (Tex.Civ.App.—Tyler 1977, no writ). Thus, having reconsidered the entire record, having reviewed the evidence in the light most favorable to appellee, I would conclude, as a matter of law, that the failure of appellee to maintain control of the boat was negligence and that such negligence was a proximate cause of the accident. Since there is no evidence of extenuating circumstances mitigating the presumption of negligence, I find the evidence factually insufficient to support the jury findings.

I would reverse and remand this cause for a redetermination of damages.